**Warren F. WATSON, Plaintiff,**

v.

**William BARKER and Ralph Gardner, Defendants.**

**Civ. A. No. 76-3.**

United States District Court,
W. D. Pennsylvania.

March 16, 1977.

Robert B. Truel, Truel & Ploeger, Pittsburgh, Pa., for plaintiff.

Judith K. Giltenboth, Asst. U.S. Atty., Pittsburgh, Pa., for defendants.

## OPINION

McCUNE, District Judge.

Plaintiff, a part-time mailhandler in the Pittsburgh Post Office, brought this action to recover damages allegedly resulting from the negligence of the defendants Barker and Gardner, who are, respectively, tour superintendent and general foreman of mail processing for the United States Postal Service. The defendants, represented by the United States Attorney, have moved for summary judgment on the grounds that they are immune from civil liability for the acts in question.

The Complaint alleges the following: Plaintiff had sustained a work-related back injury prior to February 22, 1975. On that date, he returned to work in the Post Office under directions from his doctor that he engage in no heavy duty work. These directions were presented to the proper Postal Service officials, who in turn instructed the defendants, plaintiff's superiors, that plaintiff's duties were to be so limited. Contrary to these instructions, defendants assigned plaintiff to the "loose pack" area, under threat of being fired, where the work required heavy lifting and pulling. Plaintiff did this work for about a month before his back condition deteriorated to the point where he was forced to cease work.

The affidavits, depositions, and exhibits, in the record reveal these facts: The plaintiff is, and at all relevant times has been, a substitute mailhandler. Upon his return to work in February, 1975, he received a "Limited Duty Assignment" letter from the personnel department of the Postal Service. The letter restricted plaintiff's duties as follows: "No heavy lifting, pulling, pushing, twisting or bending." The letter further stated that plaintiff was to report to Tour One [1] and that his duties were "to be assigned at the discretion of the Tour Superintendent." Defendant Barker was the Tour Superintendent and defendant Gardner, a general foreman on Tour One.

In general, a tour superintendent in mail processing has the responsibility to determine the manpower and equipment needs of his tour, to schedule supervisory work assignments and priorities, and to review requests from subordinates on policy, procedure, operational techniques and employee and organizational problems. In other words, the superintendent has the discretion to assign all employees, including limited duty employees, as needed, within the bounds of any restrictive collective bargaining agreement provisions. Thus, the superintendent must decide whether or not a limited duty assignment for an injured employee is available on his tour and in what reporting area. He must then decide whether the particular injured employee can fill that assignment.[2] The superintendent's decision is relayed to employees through the general foreman. The general foreman has the responsibility to schedule work and provide instructions to subordinate foreman, to regulate the work force, and to meet time schedules and production goals. Regarding limited duty assignments, the general foreman has the authority to assign limited duty employees to the various reporting areas, shifting their assignments according to the demand of the work load.[3]

The local memorandum of understanding in effect in February and March, 1975, between the Postal Service and the Mailhandler's union, of which plaintiff is a member, does not designate any specific assignments as light duty assignments.[4] The superintendent and general foreman of each Tour are free to exercise their discretion in these matters. Within each reporting area on the mail processing floor are a number of different jobs. There are certain jobs which, due to the physical exertion required, only regular duty employees can perform. There are also certain jobs which, when necessity demands, may be performed by an employee on limited duty. In the "loose pack" area, for example, only regular duty employees could engage in stuffing sacks with mail, weighing the mail, and loading the sacks on trucks. However, limited duty employees could engage in gathering mail from the conveyor belt, sorting the mail into zip codes, and verifying addresses.

The gravamen of the complaint is that defendants were negligent in assigning plaintiff to the loose pack area for his limit-

---

1. A "tour" in the Post Office is a work shift. Each twenty-four hour period consists of three tours of duty. Tour One ran from 10:00 P.M. until 6:30 A.M.

2. See: Affidavit of Keck, Exhibit E; Affidavit of Moser; Deposition of defendant Barker.

3. See: Affidavit of Keck, Exhibit E; Affidavit of Moser; Deposition of defendant Gardner.

4. See: Affidavit of Keck, Exhibit J, pages 19 and 42, and Exhibit K, pages 11 and 4A.

ed duty. It is undisputed that the defendants, Barker and Gardner, did just that. The complaint also contains an allegation that the defendants threatened to fire plaintiff if he did not report to the loose pack area. In his deposition, plaintiff claims that defendant Barker, in assigning him to loose pack, said, "You go there, or you go home."

The question presented is whether the defense of official immunity applies in this case. We have concluded that it does apply and that the action against these defendants is barred.

■ The doctrine of official immunity provides that government officials enjoy an absolute privilege from civil liability should the activity in question fall within the scope of their authority and the action undertaken requires the exercise of discretion. There is no need here to trace the development of this rule, the current posture of which stems from the leading case of *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). The purpose of this privilege is to insure the effective functioning of the Government. Officials of the Government must perform their duties free from the fear that their actions may result in personal damage suits.

■ This rule of immunity is not limited to the highest executive officers of the Government.[5] It is clear from the stated facts that the defendants held important positions in the Postal Service. The mail processing operation is at the core of the Post Office, and must function efficiently in order for the Postal Service to discharge its primary responsibility, i. e., the delivery of mail. Assuming that the facts of a case allow, the policy behind the immunity rule is applicable to officials of the defendants' rank.

■ There is no doubt that the acts complained of were performed by the defendants within the scope of their duties.

Plaintiff has argued that the defendants acted outside their authority and simply disobeyed orders by forcing him to work in the loose pack area and to engage in heavy labor. Although there are statements in the depositions to the effect that plaintiff was told to go home if he did not report to "loose pack," such a statement on the part of Barker would be within his discretion. The superintendent and general foreman must determine if a limited duty employee is physically able to do the work that is available. If the employee cannot do the work, his superior must send him home. The fact is that in assigning an employee, especially a limited-duty substitute employee, to a specific work area, the defendants were acting upon a matter committed to their supervision. Nothing in the record, including plaintiff's contention that the defendants acted maliciously toward him, contradicts this fact. It has been held that,

" . . . What is meant by saying that an officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him. . . . . "

*Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949), as quoted in *Barr v. Matteo, supra*.

As to the second component of the immunity rule, we believe that the record establishes that the alleged negligent acts demanded the exercise of the defendants' discretion. The defendants were much more than subordinate employees who performed only minor ministerial duties and never exercised judgment. As tour superintendent, defendant Barker directed a complex mail distribution operation, and had primary management responsibility for the mail processing facilities and work force. His judgment was constantly called upon to insure the quality and quantity of work done. On

---

**5.** See, for example, *Martinez v. Schrock*, 537 F.2d 765 (3d Cir. 1976), involving an army surgeon; *Estate of Burks v. Ross*, 438 F.2d 230 (6th Cir. 1971), involving a director of a Veterans Administration hospital; *Garner v. Rathburn*, 346 F.2d 55 (10th Cir. 1965), involving a civilian maintenance foreman at an Air Force base; *Leighton v. Peters*, 356 F.Supp. 900 (D. Haw. 1973), involving a naval weapons officer.

each tour there are several general foreman, immediately below the superintendent in rank, who naturally are vested with much less management responsibility, but who work very closely with the superintendent in making decisions on the regulation of the work force. Particularly with regard to the assignment and reassignment of limited duty employees to work areas in which they are needed, the general foreman exercises a discretion which is essential to a smooth mail distribution operation.

We must determine whether the acts complained of were appropriate exercises of a discretion which these officials must possess if the Postal Service is to function effectively. Having considered the precise function in question, we believe that these officials are likely to be overly restricted in the performance of that function by the threat of personal liability for tortious conduct. There are indications in the record[6] that relations between the mail processing employees and the Postal Service management were strained, at least at the time in issue. Undue pressure to mollify the complaints of employees might easily affect the ability of supervisory officials to regulate the work force on an efficient basis. Unfounded lawsuits might be employed to intimidate Postal Service management. Avenues other than civil tort suits are available to deter the irresponsible exercise of authority by supervisory management.[7] The interest in protecting postal employees from personal damage suits brought on account of the exercise of the particular public duties imposed upon them here outweighs the interest in protecting individual employees from pecuniary damage caused by the actions of these officials. The plaintiff's claims more properly rest in Workmen's Compensation.

The defendants' motion for summary judgment will be granted. We conclude that the facts necessary to a resolution of the immunity issue are not in dispute, and that the defendants are entitled to judgment as a matter of law.

An appropriate order follows.

---

**6.** See, Deposition of Presley, who was president of the local union of which plaintiff was a member.

**7.** This is an appropriate consideration in weighing the contribution of immunity to effective government against the potential harm to individuals. *Barr v. Matteo*, 360 U.S. 564, 576, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).