**Ronald E. WILSON, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. No. 83–0805.**

United States District Court,
M.D. Pennsylvania.

April 2, 1984.

Ronald Wilson, pro se.

David C. Shipman, Asst. U.S. Atty., Harrisburg, Pa., for the U.S.

Charles F. Greevy, III, Williamsport, Pa., Joseph Goldberg, Washington, D.C., for American Fed.Govt.Emp., Local 148, Third Dist., Council of Prison Locals, Shamburg, Musky, Howard, Cohen, LaPorte.

Ruth E. Peters, Solicitor, Steven H. Svartz, Deputy Solicitor, Pamela P. Johnson, Atty., for FLRA and Wood & Fabii.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

The plaintiff, proceeding pro se, filed this action on June 16, 1983, claiming that he is the victim of discrimination on the basis of a handicap[1] at his place of employment, the United States Penitentiary at Lewisburg, Pennsylvania.[2] Named as defendants are the United States, the Department of Justice, the Bureau of Prisons, the Federal Labor Relations Authority (F.L.R.A. or "the Authority"), the American Federation of Government Employees (A.F.G.E.), Local 148 of the A.F.G.E. and the Council of Prison Locals. Also named are various individuals within the penitentiary and the agencies mentioned above.

Having initially been assigned to Judge Muir, this case was reassigned to the undersigned on July 20, 1983. On August 8, 1983, defendants A.F.G.E., Local 148, the Council of Prison Locals and the individual defendants connected with these bodies [hereinafter collectively referred to as "the union defendants"] moved for a more definite statement under Fed.R.Civ.P. 12(e). The F.L.R.A. and the individual defendants connected therewith moved to dismiss on August 22, 1983. On the same day, the United States, the Department of Justice, the Bureau of Prisons and the remaining individual defendants [hereinafter collectively referred to as "the government defendants"] filed a motion to dismiss.

On August 23, 1983, the plaintiff filed an amendment to his complaint which was not intended "to change, or take away from the original complaint, only to clarify" what already had been alleged. The union defendants filed a supplemental motion for a more definite statement on September 8, 1983 and, five days later, the plaintiff moved for a default judgment against A.F.G.E. and the individual union defendants. At the same time, the plaintiff moved for a declaratory judgment against the government defendants.

On October 27, 1983, the court conducted a scheduling conference during which the plaintiff was given the opportunity to set forth his allegations in more detail. At this conference, the court also permitted the

---

1. The plaintiff, a Vietnam veteran, is classified as being 50% disabled as a result of his having suffered gunshot wounds to the left side of his chest in 1966. Notwithstanding his classification as a disabled veteran, the plaintiff feels that he has had a "complete recovery."

2. Although he initially purported to bring this suit as the representative of a class, the plaintiff later withdrew his request to have the case treated as a class action.

defendants to explain their positions regarding the pending motions. On November 23, 1983, the plaintiff moved "to proceed to judgment" on his requests for a default judgment against the union defendants and a declaratory judgment against the government defendants. Finally, on January 23, 1984, the plaintiff moved for leave to amend his complaint to assert a right to mandamus relief.

All of the motions filed by the parties are now ripe for disposition.

## FACTUAL BACKGROUND

The following facts are contained within the complaint or were set forth by the plaintiff at the conference held on October 27, 1983. The plaintiff's version of all relevant events is accepted as true for purposes of the motions presently before the court.

The plaintiff began working as a correctional officer at Lewisburg in November 1975. The plaintiff asserts that his "problems" began in 1979 when defendant Hackle became the chief of mechanical services at the prison. At this time, the plaintiff was the "correctional security officer" of the penitentiary and, as such, was responsible for being the locksmith of the prison. Although Hackle was not the plaintiff's supervisor, the budget for the plaintiff's department came under Hackle's jurisdiction. According to the plaintiff, some of his purchase requirements were not being filled properly by Hackle. The two men began having confrontations during which the plaintiff accused Hackle of jeopardizing the security of the prison and Hackle threatened to cause the plaintiff's termination from employment.

On January 11, 1981, the plaintiff was promoted to the position of "Machinist Foreman" at the prison. While this promotion led to a salary increase for the plaintiff, it also placed him directly under Hackle's supervision. According to the plaintiff, matters became worse and Hackle continued to harass him.

In August 1981, the Office of Personnel and Management (O.P.M.) conducted an audit at Lewisburg and concluded that the plaintiff was "not qualified" for the position of Machinist Foreman and should be demoted. O.P.M. reached this conclusion because two rating points had been omitted from the plaintiff's "rating of promotion potential form" filled out by prison officials. The plaintiff emphasizes that he did not get a "zero" in lieu of rating points; rather, the two points were simply omitted.

In October 1981, the plaintiff first learned of the O.P.M. audit and the conclusion that he was unqualified by reason of the omission in his personnel file. He was not yet demoted at this time. The plaintiff was advised, however, that he would soon be getting a letter regarding his purportedly poor performance. The plaintiff and his union filed a grievance concerning these charges. The plaintiff asserts that, at one point during the grievance procedure, the Warden agreed to drop the charges of poor performance in light of O.P.M.'s conclusion that the plaintiff should be demoted in any event. For reasons which do not appear clear from the record, the dispute went to arbitration anyway, and the arbitrator ultimately rejected the grievance.

In May 1982, the plaintiff was demoted. He was not, however, returned to his former position as the locksmith of the prison. Instead, he was put back on the correctional force as a corrections officer. Notably, the demotion took place pursuant to the O.P.M. audit rather than the charges of poor performance. The plaintiff contends that his demotion was the product of a conspiracy between Hackle and various other defendants employed at the penitentiary. To support this theory, he avers that Hackle told one William Bechtold that the plaintiff was promoted to the position of Machinist Foreman so that he could be removed from the locksmith position and eventually eased out entirely. The plaintiff also points to the fact that the O.P.M. audit was not a "random" audit and was, in fact, requested by someone. Finally, he asserts he was the only Lewisburg employee adversely affected by the audit and, when he tried to appeal the decision to demote him, he was subjected to such retaliatory meas-

ures as being assigned to a less desirable work schedule.

The plaintiff attempted to utilize the grievance procedure regarding his demotion. He asserts, however, that his union allowed too much time to pass before demanding arbitration, thus creating a waiver of his right to use this method of resolving his dispute. The plaintiff also claims that he filed a complaint with the Merit Systems Protection Board (M.S.P.B.) in February 1982. The M.S.P.B. refused to exercise its jurisdiction, however, because the plaintiff did not file his complaint through the Board's "special counsel." The plaintiff alleges that this demonstrates a breach of duty on the part of his union because it was his union representative's responsibility to aid him in filing this complaint.

The plaintiff has attempted to enlist the aid of his Congressman in resolving this matter. At the request of the Congressman, defendant Carlson of the Bureau of Prisons and one of his assistants met with the plaintiff in an attempt to resolve this matter. Defendant Carlson sent an "investigative team" to the prison. The plaintiff asserts, however, that no one from this team interviewed him or the witnesses who purportedly would support his version of the events. Although the investigators filed a report recommending that certain individuals be assisted with alleged problems concerning the personnel department at Lewisburg, no action was recommended regarding the plaintiff.

The plaintiff also filed unfair labor practice charges with the defendant Federal Labor Relations Authority. The Authority declined to issue a complaint. The plaintiff asserts that the Authority and its employees "negligently" and "discriminatorily" investigated his complaint.

## MOTIONS INVOLVING THE UNION DEFENDANTS

■ It is clear that the court may not grant the plaintiff's motion for a default judgment against the union defendants. Notwithstanding the plaintiff's belief that the original and supplemental Rule 12(e) motions were intended to "cause undue delay" or to gain an "unfair advantage," these assertions are not supported by the record and therefore cannot form the basis for the entry of a default. Accordingly, the plaintiff's motion for a default judgment and his motion "to proceed to judgment" on his request for the default judgment will be denied.

■ This is not to say, however, that the motions under Rule 12(e) must be granted. Motions for a more definite statement are not viewed with favor and should be granted only if the allegations contained in the complaint are so vague that the defendant cannot reasonably be expected to frame a response to it. *In re Arthur Treacher's Franchisee Litigation,* 92 F.R.D. 398, 406 (E.D.Pa.1981); *accord, Famolare, Inc. v. Edison Bros. Stores, Inc.,* 525 F.Supp. 940, 949 (E.D.Cal.1981). The court has carefully reviewed the original complaint and the August 23rd "amendment" filed in the above-captioned matter. While these pleadings are not models of clarity, pro se pleadings rarely are. The important point for purposes of the instant motion is that the court is unable to concur with defense counsel's view that "[t]he complaint is so confusing and imprecise as to make it impossible to adequately plead defenses." *See* Memorandum of Points and Authorities at 2 n. 1, Document 15 of the Record. It seems clear that the plaintiff grounds his claim upon a purported breach of duties owing to him by his union. Inasmuch as the court has been able to decipher the plaintiff's allegations, it is not unreasonable to hold that the union defendants have been adequately informed of the accusations against them.[3] The court's conclusion in this regard is supported by

---

**3.** In reaching this conclusion, the court does not rely solely upon the plaintiff's pro se status. Indeed, if the union defendants were public officials and if the claims advanced were grounded upon civil rights violations, the court might very well have required factually specific assertions notwithstanding that plaintiff is pro-

the fact that the plaintiff amplified his allegations at the conference held in this matter and has provided some documentary support for his charges.[4] *See* Brief and Supporting Documents in Support of Motion Filed in Request for Judgment in Default as Against A.F.G.E., Exhibit § H, Document 36 of the Record. Hence, the motion for a more definite statement will be denied and the union defendants will be directed to file an answer or otherwise respond to the plaintiff's allegations.

## MOTION TO DISMISS FILED BY THE FEDERAL LABOR RELATIONS AUTHORITY DEFENDANTS

■ The plaintiff's allegations pertaining to the F.L.R.A. and defendants Wood and Fabii do not set forth clearly the nature of the wrong purportedly committed against him. The motion to dismiss filed by the F.L.R.A. defendants is premised upon the belief that the plaintiff attempts to state a cause of action predicated upon invidious discrimination on account of his status as a disabled veteran. To the extent that this is, in fact, the basis of the plaintiff's claim, the motion to dismiss filed by the F.L.R.A. defendants must be granted, for there are no allegations contained in the complaint from which the court can infer that any discriminatory animus existed on the part of these defendants. In addition, the plaintiff was given the opportunity to expound upon his charges of discrimination at the conference conducted on October 27, 1983. Significantly, however, nothing was stated at this conference which would lead the court to believe that the plaintiff intends to try to prove that the F.L.R.A. defendants discriminated against him on account of his 50% disability status.

The court finds, however, that the complaint also may be read to assert that the F.L.R.A. and its agents, Wood and Fabii, negligently investigated his unfair labor practice charges and that the regional director erroneously declined to issue a complaint. To the extent that these are the

plaintiff's claims, the motion to dismiss must be granted. The decision to issue or to decline to issue an unfair labor practice complaint is not subject to judicial review. *See, e.g., Turgeon v. Federal Labor Relations Authority,* 677 F.2d 937, 938–40 (D.C.Cir.1982); *Martel v. Carroll,* 562 F.Supp. 443, 444 (D.Mass.1983). The plaintiff also cannot hold the F.L.R.A. or defendants Wood and Fabii liable in damages for having conducted a "negligent investigation" of the unfair labor practice charges. After carefully reviewing the statutory scheme, the court can find no provision conferring a private right of action upon federal employees allegedly aggrieved by a negligent investigation undertaken by F.L.R.A. personnel. Moreover, to the extent that the plaintiff might state a claim under state tort law principles, recovery is barred under *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). *See, e.g., Watson v. Barker,* 428 F.Supp. 590, 592 (W.D.Pa.1977) ("The doctrine of official immunity provides that government officials enjoy an absolute privilege from civil liability should the activity in question fall within the scope of their authority and the action undertaken requires the exercise of discretion.").

## MOTIONS INVOLVING THE GOVERNMENT DEFENDANTS

As noted, *supra,* the government defendants have filed a motion to dismiss and an alternative motion for summary judgment. Both the plaintiff and the government defendants have filed supporting documents for the court's review. Inasmuch as the court has considered these documents, the motion to dismiss must be treated as a motion for summary judgment, and the court therefore will then consider the defendants' alternative motion for summary judgment.

The evidence presented in connection with the summary judgment motion will not be summarized here. It is sufficient to

---

ceeding pro se. *See, e.g., Stackhouse v. Marks,* Civil No. 82–0734 (M.D.Pa., Apr. 21, 1983).

**4.** The court, of course, expresses no opinion on the sufficiency of this evidence.

state that the court has carefully considered the large volume of documents submitted by the plaintiff, *see* Document 36 of the Record, as well as the exhibits appended to the government defendants' motion for summary judgment; *see* Document 31 of the Record. In reviewing this evidence, the court has viewed all fair factual inferences in the light most favorable to the plaintiff. *E.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Coastal States Gas Corp. v. Department of Energy,* 644 F.2d 969, 979 (3d Cir.1981); *Sesso v. Rapone,* 537 F.Supp. 1091, 1092 (E.D.Pa.1982).

Initially, the defendants assert that only the Attorney General of the United States is a proper party to answer the plaintiff's allegations. Because of the procedural and other requirements contained in the statute creating a private right of action for handicapped federal employees, *see* 29 U.S.C. § 794a(a)(1), it is argued that this court lacks jurisdiction to consider the discrimination claims asserted against the other defendants. *See generally Brown v. General Services Administration,* 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976); *Prewitt v. U.S. Postal Service,* 662 F.2d 292, 301–04 (5th Cir.1981).

The court finds it unnecessary to decide whether the defendants' position is correct under these circumstances, for the plaintiff has failed to state a valid discrimination claim against *any* of the defendants.[5] The plaintiff accuses the defendants of discriminating against him on account of his status as a disabled veteran, but does so in the most conclusory manner. No facts are set forth to support the charges. While it ordinarily is appropriate to direct that the plaintiff file an amended complaint, *see Ross v. Meagan,* 638 F.2d 646, 650 (3d Cir.1981), such a course of action would be futile here, for the evidence of record demonstrates that the defendants are entitled to the entry of summary judgment.

■ After carefully reviewing the documents submitted by both sides in connection with the summary judgment motion, the court concludes that there is no triable issue of fact concerning the reason for the plaintiff's demotion. The documents submitted by the defendants demonstrate quite clearly that the plaintiff's demotion occurred as a result of the O.P.M. audit. In addition, this evidence shows that O.P. M.'s conclusion was supported by factors other than the omission of two rating points from the plaintiff's rating of promotion potential form. Significantly, the documentary evidence shows that O.P.M. looked to the points which *did* appear on the form and found that the plaintiff had been overrated by prison officials. O.P.M. found that the plaintiff did not "have sufficient experience or training in the craft skill (machinist) to support the point values assigned for most job elements in the crediting plan. Further, based on our applications of the Bureau of Prisons' crediting plan for Machinist, we find that Mr. Wilson does not meet the minimum requirements for the job." *See* Defendants' Exhibit 8, attached to Document 31 of the Record.

The plaintiff has not produced any evidence which controverts the defendants' showing that the demotion was the product of O.P.M.'s independent evaluation of the plaintiff's qualifications. In addition, he has produced no evidence tending to show that the demotion was the product of any discriminatory animus on the part of any personnel at Lewisburg.

Certain claims appearing in the complaint do not involve handicap discrimination, however. Indeed, the plaintiff's complaint, when coupled with his explanations at the October 27, 1983 conference, reveal what appears to be a first amendment claim. Specifically, the plaintiff seems to assert that defendant Hackle retaliated against him for his having criticized the manner in which certain purchase orders were being filled. The plaintiff suggests that Hackle

---

**5.** This being the case, there would be no point in allowing the action to proceed against only the Attorney General, for the court's decision today excludes the possibility that the plaintiff's employment status was affected by discrimination on account of a handicap. *See* text *infra.*

arranged for his promotion to Machinist Foreman so that he would eventually be demoted or terminated. In addition, the plaintiff avers that Hackle, acting with others, retaliated against him in other ways as well, *viz*, by charging him with poor performance and assigning him to a less desirable work schedule. Inasmuch as the defendants have not submitted affidavits or other documentation controverting these allegations, the court accepts the plaintiff's assertions as true for purposes of the summary judgment motion.

Nevertheless, even assuming the truth of these serious accusations, the defendants are entitled to judgment as a matter of law on the plaintiff's first amendment "harassment" claims. *See Bush v. Lucas,* —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). The Supreme Court in *Bush* held that a federal employee may not assert a *Bivens* action [6] for damages when the claim is based upon an alleged violation of the plaintiff's first amendment rights by a supervisor. 103 S.Ct. at 2406. The Court reasoned:

> Given the history of the development of civil service remedies and the comprehensive nature of the remedies currently available, it is clear that the question we confront today is quite different from the typical remedial issue confronted by a common-law court. The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new

judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff. The policy judgment should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result from the addition of another remedy for violations of employees' First Amendment rights.

*Id.* at 2416. After carefully analyzing the regulatory scheme and the potential costs and benefits attendant upon the implication of a *Bivens* remedy in the context of federal employment, the *Bush* Court declined to afford relief.

■ The court finds *Bush* to be controlling in the instant case. The acts which purportedly comprise retaliation against the plaintiff are intimately associated with his federal employment relationship, *viz.*, the demotion, the assignment to a less desirable schedule, and the criticism of his work performance. Given the fact that these claims "arise from an employment relationship that is governed by comprehensive substantive and procedural provisions of federal law providing meaningful remedies against the employer, it would be inappropriate for a federal court to supplement that statutory scheme with a new, nonstatutory damages remedy implied from the Constitution." *Woodrum v. Southern Ry. Co.,* 571 F.Supp. 352, 359 (M.D.Ga.1983) (citing *Bush,* 103 S.Ct. at 2416–18.).[7]

An appropriate Order shall enter.[8]

**6.** *See Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**7.** The fact that the plaintiff may be time barred from pursuing his remedies before the M.S.P.B. does not defeat the court's conclusion regarding the implication of a *Bivens* remedy. *Cf. Gleason v. Malcolm,* 718 F.2d 1044, 1048 (11th Cir.1983) ("The purpose of denying a private cause of action to federal employees is to ensure that they do not bypass comprehensive and carefully balanced statutory and administrative remedies in order to seek direct judicial relief."); *Wood-*

*rum v. Southern Ry. Co.,* 571 F.Supp. at 359 (granting defense motion under *Bush* notwithstanding that plaintiff's F.E.L.A. claim was time barred). The court expresses no opinion, however, on the possibility that the plaintiff may secure judicial relief against his union for allegedly having failed to aid him in pursuing his administrative remedies.

**8.** The plaintiff has moved for a "declaratory judgment," but has done so purportedly under the authority of Rule 56. In view of the reference to Rule 56 and the plaintiff's submission of supporting documents, the court construes this

motion as a cross motion for summary judgment. The court will deny the motion for the same reasons as stated in connection with the grant of summary judgment in favor of the government defendants. The court will also deny the plaintiff's motion for leave to amend his complaint to assert a right to mandamus relief, as well as his motions "to proceed to judgment" against the union and government defendants.