**UNITED STATES of America, Plaintiff,**

v.

**Kailash Chandra PANI and Kailash Chandra Pani, M.D., P.C., Defendants.**

**No. 88 Civ. 4970 (LLS).**

United States District Court, S.D. New York.

July 19, 1989.

Benito Romano, U.S. Atty., and Gabriel W. Gorenstein, Asst. U.S. Atty., S.D. New York, New York City, for plaintiff.

Richard A. Kerner, New York City, for defendants.

## OPINION AND ORDER

STANTON, District Judge.

The plaintiff moves to amend the complaint and for partial summary judgment. The defendants move to dismiss plaintiff's claim for unjust enrichment. The plaintiff's motions are granted, and the defendants' motion is denied.

## BACKGROUND

Defendant Dr. Kailash Chandra Pani is a neurosurgeon. He is the sole shareholder of defendant Kailash Chandra Pani, M.D., P.C. (the "corporation").

In November 1983 Pani was charged in an indictment with mail fraud, 18 U.S.C. §§ 1341–42 (Counts 1–9), making 63 false claims against the government in violation of the criminal False Claims Act, 18 U.S.C. § 287[1] (Counts 10–72), and conversion of government funds, 18 U.S.C. § 641[2] (Counts 73–122) for submitting to Blue Cross and Blue Shield of Greater New York ("Blue Cross") and the federal Medicare "Part B" program ("Medicare") claims for payment for surgeries that he allegedly did not perform.

In May 1984 Pani was convicted on four counts of mail fraud, three counts of making false claims (Counts 22, 38, and 39), and three counts of conversion (Counts 82, 97, and 98). The convictions for filing false claims and conversion were for filing and receiving payment on three claims: No. 1200431915, No. 1225161362, and No. 1229525209. Pani was sentenced to a two

year suspended sentence on each of the ten counts (to run concurrently), ordered to make restitution to Blue Shield in the amount of $4,187 and to Medicare in the amount of $1,380, ordered to complete 400 hours of community service, and was fined $30,000 ($10,000 on Counts 22 and 82, $10,-000 on Counts 38 and 97, and $10,000 on Counts 39 and 98).

In June 1986 the United States (the "government") brought this action against Pani and the corporation alleging that they filed 157 fraudulent claims, in violation of the civil False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3731, for payment for surgeries that Pani did not perform. The 157 claims include the 63 that Pani was accused of fraudulently filing in the criminal action. Claim No. 1200431915 is identified as Claim No. 77 (for $400) in Exhibit A to the Amended Complaint, Claim No. 1225161362 is identified as Claim No. 83 (for $440), and Claim No. 1229525209 is identified as Claim No. 84 (for $440).

At the time this suit was filed section 3729 of the FCA provided that

A person ... is liable to the United States Government for a civil penalty of $2,000, an amount equal to 2 times the amount of damages the Government sustains because of the act of that person, and costs of the civil action, if the person—

(1) knowingly presents, or causes to be presented, to an officer or employee of the Government ... a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved....

---

**1.** At that time, section 287 provided:

Whoever makes or presents to any person ... in the civil ... service of the United States, or to any department or an agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be fined not more than $10,000 or imprisoned not more than five years, or both. The penalty provision of Section 287 was amended in 1986 to read "imprisoned not

more than five years and shall be subject to a fine in the amount provided in this title." 18 U.S.C. § 287 (1986 Supp.)

**2.** Section 641 provides "Whoever ... knowingly converts to his use ... money ... of the United States ... [s]hall be fined not more than $10,000 or imprisoned not more than ten years or both...."

In October 1986 Congress enacted several amendments to the FCA. The amendment relevant here increased liability for each violation to three times the amount of actual damages and a fine of not less than $5,000 and not more than $10,000.[3]

The government moves to amend the complaint to reflect the increased liability provided by this amendment and for partial summary judgment based on Pani's criminal conviction. The defendants move to dismiss the government's claim for unjust enrichment asserting that it is time barred, and oppose the motion for partial summary judgment on the grounds that the recovery sought amounts to a second punishment of Pani in violation of the Double Jeopardy Clause of the Constitution.[4]

## DISCUSSION

### 1. Motion to Amend the Complaint

The government's complaint seeks to recover $527,324.12 based on the pre-amendment section 3729 (a penalty of $2,000 for each of the 157 false claims and double its damages of $106,662.06 paid on the claims). The government filed an amended complaint which merely added the corporate defendant.

The proposed second amended complaint seeks to recover $1,889,986.18 (a penalty of $10,000 per claim and triple its damages of $106,662.06). The government argues that the statutory amendment should apply retroactively under *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

In *Bradley* a provision of the Education Amendments Act of 1972 granting attorney's fees to a prevailing party was enacted while the case was on appeal. The Court held that the provision could be applied to services rendered before it was enacted. The Court

anchor[ed] [its holding] on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary....

The concerns ... relative to the possible working of an injustice center upon (a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights. *Id.* at 711, 717, 94 S.Ct. at 2016, 2019.

Here, Congress did not expressly consider whether the 1986 amendments should apply prospectively or retroactively. *U.S. v. Hill*, 676 F.Supp. 1158, 1167 (N.D.Fla. 1987).

The government argues that post-enactment statements by one of the authors of the bill, Representative Berman, "provide strong evidence of Congress' intent." Representative Berman asserted that

It was my understanding that all of the [FCA] amendments would apply to pre-October [1986] false claims.... I specifically raised the question whether it was necessary to include express language regarding retroactive application just to make clear Congress' intent. I concluded that, based on Supreme Court precedent, such express language was not necessary and that language should be added to the bill only if Congress intended it

---

3. The amount of damages may be doubled if the court finds that
   (A) the person committing the violation of this subsection furnished officials of the United States responsible for investigating false claims violations with all information known to such person about the violation within 30 days after the date on which the defendant first obtained the information;
   (B) such person fully cooperated with any Government investigation of such violation; and
   (C) at the time such person furnished the United States with the information about the violation, no criminal prosecution ... had commenced under this title with respect to such violation....
   31 U.S.C. § 3729(a)(7)(A), (B) & (C) (1986 Supp.).

4. Defendants substituted counsel before this motion was fully submitted. Their original attorney, Gopaljee Jaiswal, Esq., argued that the government's complaint should be dismissed because all its claims were untimely and this suit was barred by the res judicata effect of Pani's acquittal. Their new counsel, Richard Kerner, Esq., does not pursue those arguments, and they are treated as withdrawn.

to apply prospectively. The Supreme Court ruled in *Bradley* ... that statutes are presumed to apply retroactively unless that would create a grave injustice or congressional intent was clearly to the contrary. In fact, *Bradley* expressly said that courts should presume that Congress intended retroactive application by mere silence on the issue. It was therefore apparent that it was unnecessary to be explicit about retroactivity, as the courts would infer it from our silence. 133 CONG. REC. H9515 (daily ed. Nov. 3, 1987)

Representative Berman's statements, however, provide limited support for the government's contention that Congress intended the statute to apply retroactively. *See Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 119 n. 13, 100 S.Ct. 2051, 2061 n. 13, 64 L.Ed.2d 766 (1980) ("The less formal types of subsequent legislative history provide an extremely hazardous basis for inferring the meaning of a congressional enactment."); *cf. Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 805 F.2d 1074, 1081 (1st Cir.1986) (While "congressional hindsight is no substitute for legislative analysis generated during the period immediately preceding the enactment of a bill, we do find the language of the recent conference report to have some force due to the aura of uncertainty that has surrounded this particular portion of the [statutory] scheme.")

The government also asserts that

two other civil fraud remedies statutes passed by Congress in the same legislative session contain specific provisions prohibiting their application to any pre-enactment conduct ... Similarly, in the previous session of Congress, amendments to the False Claims Act relating solely to Department of Defense contracts were specifically made applicable only to claims submitted after the date of enactment ... The absence of any similar language in the [FCA] Amendments of 1986 clearly shows that Congress intended the Amendments to apply to pending litigation. Plaintiff's memo in support, at 10.

While the government's assertion is plausible,

it is equally likely that Congress had actually intended to insert a prospectivity clause in the 1986 amendments in light of the fact that one had been included in three similar enactments, but had failed to do so through nothing more than mere inadvertence. Inferring a clear "intent" through congressional silence is not a sound interpretative policy, and I decline to do so. *Hill,* 676 F.Supp. at 1167 n. 12.

Lacking conclusive evidence of Congress' intent, the court must determine whether retroactive application would result in "manifest injustice" to the defendants.

The first *Bradley* factor focuses on the nature of the parties involved. "[I]n mere private cases between individuals, a court will ... struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns ... the court must decide according to existing laws...." *Bradley,* 416 U.S. at 712, 94 S.Ct. at 2016 quoting *U.S. v. The Schooner Peggy,* 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801); *see also United States v. Marengo County Commission,* 731 F.2d 1546, 1554 (11th Cir.1984) ("Although it may not be imperative to apply new congressional enactments to preexisting disputes over private issues, when the new statute manifests important public policy, courts must respect that policy and apply it.")

Here, the amendment evinces a clear effort by Congress to address an issue of national concern, government fraud. "According to some estimates, billions of dollars in public funds are lost annually through government fraud." *Hill,* 676 F.Supp. at 1169. Government fraud also "erodes public confidence in the Government's ability to efficiently and effectively manage its programs", and may pose a threat to human life, such as when a contractor provides defective goods. S.Rep. No. 345, 99th Cong., 2d Sess. 3–4, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5266, 5267–69. Since the amendment addresses a matter of important public policy,

the first *Bradley* factor weighs in favor of retroactive application of the amendment. *U.S. v. Oakwood Downriver Medical Center*, 687 F.Supp. 302, 307 (E.D.Mich.1988).

The second *Bradley* factor is whether retroactive application "would infringe upon or deprive [defendants] of a right that had matured or become unconditional." *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020. Here, defendants have no vested right in double rather than triple damages, or to a $2,000 forfeiture rather than a $5,000 to $10,000 forfeiture. *Hill*, 676 F.Supp. at 1169 citing *O'Hare v. General Marine Transport Corp.*, 740 F.2d 160, 170–172 (2d Cir.1984) (amendments that change remedial scheme by imposing attorney's fees, award of interest, double interest payments or liquidated damages do not result in manifest injustice where conduct was previously subject to federal liability); *see also Meller v. Heil Co.*, 745 F.2d 1297, 1305 (10th Cir.), *cert. denied*, 467 U.S. 1206, 104 S.Ct. 2390, 81 L.Ed.2d 347 (1984) ("a defendant does not have a vested right in the application of a given remedial scheme.... [T]he amendments do not impose an additional duty on [the defendant]; only the measure of damages that result from the violation of a duty has changed.")

The third *Bradley* factor concerns the "possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020. "This inquiry focuses on whether the new statutory obligation, if known, would have caused the defendant to alter his conduct." *Campbell v. U.S.*, 809 F.2d 563, 576 (9th Cir.1987). Here, the amendment does not impose a new obligation upon defendants, but merely increases their liability. They do not contend that they would have altered their conduct, had they known that they would have been subject to increased liability for filing false claims. Thus, the third *Bradley* factor also weighs in favor of retroactive application of the amendment.

■ Accordingly, the amendment should be applied retroactively. *Accord, Hill*, 676 F.Supp. at 1172; *U.S. v. Ettrick Wood Products, Inc.*, 683 F.Supp. 1262, 1268 (W.D.Wisc.1988); *Oakwood Downriver Medical Center*, 687 F.Supp. at 307–08; *U.S. v. Board of Education of the City of Union City*, 697 F.Supp. 167, 170–72 (D.N.J.1988); *U.S. v. Fishbach & Moore, Inc.*, Civ. 1–87–293, 1988 WL 166541 (E.D.Tenn. April 27, 1988); *U.S. v. Barnette*, 85–754—Civ. J–16 (M.D.Fla. July 22, 1988); *U.S. v. Youngstown Steel Corp.*, No. 82–2406 (W.D.Pa. March 22, 1989); *contra U.S. v. Bekhrad*, 672 F.Supp. 1529, 1530 (S.D.Iowa 1987).[5]

The government's motion to amend its complaint to reflect the increased liabilities provided by the amendment is granted.

## 2. Partial Summary Judgment

The government moves for partial summary judgment on Claims No. 77, 83, and 84, claiming collateral estoppel by Pani's criminal conviction. The defendants do not contest their liability, but assert that the recovery would be a second punishment in violation of the double jeopardy clause.[6] They rely on *U.S. v. Halper*, — U.S. —, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).

The government claims it is entitled to judgment in the amount of $32,460.00 (triple the amount paid, $1,280.00, plus $10,000 for each claim, minus $1,380.00 Pani paid in restitution in the criminal action).

---

**5.** The courts are split over whether the amendment of the *qui tam*, or private enforcement, provisions should be applied retroactively. *Compare Gravitt v. General Electric Corp.*, 680 F.Supp. 1162 (S.D.Ohio), *app. dismissed*, 848 F.2d 190 (6th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988) (applied retroactively); *Boisjoly v. Morton Thiokol, Inc.*, 706 F.Supp. 795 (D.Utah 1988) (same); *U.S. ex rel LaValley v. First National Bank of Boston*, 707 F.Supp. 1351 (D.Mass.1988) (same) *with U.S. ex rel. Boisvert v. F.M.C. Corp.*, No. 8602016

(N.D.Cal. Sept 9, 1987) (applied prospectively); *Hyatt v. Northrop Corp.*, No. 86–6437, 1988 WL 156739 (C.D.Cal. March 31, 1988) (same).

**6.** The Double Jeopardy Clause protects against 1) a second prosecution for the same offense after acquittal, 2) a second prosecution for the same offense after conviction, and 3) multiple punishments for the same offense. *See North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

In *Halper*, the defendant was convicted on 65 counts of submitting false claims in violation of 18 U.S.C. § 287. He was sentenced to two years imprisonment and a $5,000 fine. The government then brought an action under the FCA seeking to recover $130,000 as a $2,000 penalty for each false claim under the pre-amendment section 3729. The government's out of pocket loss was $585.00. The district court granted the government's summary judgment motion based on the collateral estoppel effect of the prior criminal proceeding, but denied its request for $130,000, holding that in light of Halper's previous criminal punishment, the penalty the government sought violated the Double Jeopardy Clause. Although the court recognized "that a provision for a civil penalty of $2,000 plus twice the Government's damages is not in itself a criminal penalty giving rise to a claim of double jeopardy," it concluded that the amount of the penalty bore no "rational relation" to the government's actual loss, and the imposition of the total penalty would violate the Double Jeopardy Clause by punishing Halper twice for the same conduct. *U.S. v. Halper*, 660 F.Supp. 531, 533 (S.D.N.Y.1987). The court held that the $2,000 fine was discretionary, and awarded the government $16,000 "to reasonably compensate [it] for actual damages as well as expenses incurred in investigating and prosecuting this action." *Id.* at 534.

The government moved to amend the judgment pursuant to Fed.R.Civ.P. 59(e) on the ground that the penalty was mandatory. The court granted the motion, but still refused to award the full penalty. The court held that a penalty becomes punishment when it exceeds what "reasonably could be regarded as the equivalent of compensation for the Government's loss", *U.S. v. Halper*, 664 F.Supp. 852, 854 (S.D.N.Y. 1987) quoting *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 554, 63 S.Ct. 379, 389, 87 L.Ed. 443 (Frankfurter, J. concurring), and concluded that

A penalty 220 times the actual and easily measurable loss bears no rational relation to the Government's loss....

The statute, therefore, is unconstitutional as applied to Halper. The provision for double damages, however, remedying the difficulty of calculating the Government's losses and expenses, passes Double Jeopardy scrutiny, and will be applied to give the Government judgment in the amount of two times $585.00, or $1,170. *Id.* at 855.

The Supreme Court agreed with the district court's decision.[7] The government argued that in previous cases the Supreme Court had "foreclosed any argument that a penalty assessed in a civil proceeding, and specifically in a civil [FCA] proceeding, may give rise to double jeopardy." *Halper*, — U.S. at ——, 109 S.Ct. at 1897. The Court disagreed, stating

The relevant teaching of these cases is that the Government is entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment for the purpose of double jeopardy analysis. These cases do not tell us, because the problem was not presented in them, what the Constitution commands when one of those imprecise formulas authorizes a supposedly remedial sanction that does not remotely approximate the Government's damages and actual costs, and rough justice becomes clear injustice. *Id.* — U.S. at ——, 109 S.Ct. at 1899.

The Court held that

under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.... What we announce now is a rule for the rare case, the case such as the one be-

---

7. The Court, however, vacated the decision, and remanded the case to the district court "to permit the Government to demonstrate that the District Court's assessment of its injuries was erroneous." *Halper*, — U.S. at ——, 109 S.Ct. at 1904.

fore us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment. *Id.* — U.S. at —, 109 S.Ct. at 1901.

The Court noted that "[i]t hardly seems necessary to state that a suit under the [FCA] alleging one or two false claims would satisfy the rational-relation requirement. It is only when a sizable number of false claims is present that, as a practical matter, the issue of double jeopardy may arise." *Id.* — U.S. at —, 109 S.Ct. at 1903, n. 12.

■ Here, the double jeopardy analysis applies only to the three claims of which Pani was previously convicted. This is not the "rare case" of a "prolific but small gauge offender" subject to a second punishment "overwhelmingly disproportionate to the damages he has caused." Dr. Pani is subject to a second penalty on only three claims totalling $1,280. Thus, under *Halper* the $32,460 recovery the government seeks cannot be said to bear "no rational relationship to the goal of compensating the Government for its loss," *Id.* — U.S. at —, 109 S.Ct. at 1901, considering the expenses of investigation and prosecution, such as to qualify as a second punishment in violation of the Double Jeopardy Clause.

Accordingly, the government's motion for summary judgment on those three claims is granted.

### 3. Statute of Limitations

The defendants assert that the government's claim for unjust enrichment is time barred under 28 U.S.C. § 2415(b). That section provides "every action for money damages brought by the United States ... which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues." They rely on this court's opinion in *Blusal Meats, Inc. v. U.S.*, 638 F.Supp. 824 (S.D.N.Y.1986), *aff'd on other grounds*, 817 F.2d 1007 (2d Cir.1987).

*Blusal* involved three related actions based on alleged violations of food stamp program regulations by Blusal Meats, Inc. and its principals. In the third action, the government claimed that Blusal's authorization to participate in the federal Food Stamp Program ("FSP") constituted a contract, which was breached by Blusal's alleged improper acceptance and redemption of food stamps. The government also alleged that Blusal was unjustly enriched by its improper acceptance and redemption of food stamps. This court dismissed the breach of contract claims "[s]ince the authorization of a wholesale food concern to participate in the FSP [did] not create a contractual relation between that concern and the government...." *Blusal*, 638 F.Supp. at 830.

Blusal moved for summary judgment on the unjust enrichment claim arguing that it was time barred by 28 U.S.C. § 2415(b). The government responded that the claim sounded in contract and was thus timely under 28 U.S.C. § 2415(a), which provides for a six year period of limitations for actions "founded upon any contract express or implied in law or fact."

This court held that

The substance of the claim is the proper basis for determining the appropriate statute of limitations. Here, although the government styles its claim as one for "unjust enrichment," which would be subject to the six-year limitations period under § 2415(a), its substance is that of an action for fraud.

A critical difference is that in fraud actions one must prove defendant's culpability. To prevail on a claim for unjust enrichment the plaintiff need only show that the defendant was enriched at plaintiff's expense, and that the circumstanc-

es were such that in equity and good conscience the defendant should return the money to the plaintiff. Proof of wrongful conduct by the defendant is not required. Thus, ... "the vast majority of unjust enrichment cases involve either defendants who have received 'double recoveries' or those who have unquestionably benefited through the uncompensated labors of others."

By contrast, in an action for fraud the plaintiff must prove that the defendant misrepresented a fact, knowing that his representation was false and intending that another rely upon it, and that the other party justifiably did so rely to his injury. Here the factual basis for the government's claim is that defendant knowingly and purposefully presented false documents to obtain money. That is a tort, and suit must be brought upon it within three years.... The three-year limitation is not to be changed to a six-year limitation by calling the suit one for "unjust enrichment." ... A different conclusion would, in practical terms, in many cases annul the three-year tort limitations period. *Id.* at 832. (citations omitted)

As the government points out, distinguishing *Blusal,* there

the relationship between Blusal and the United States was said to be "in the nature of a license" and not in the nature of a contract, a factual situation that presumably bore on this Court's determination that the suit purportedly in quasi-contract was in fact based on fraud. Unlike the food stamp program at issue in *Blusal Meats,* Medicare Part B payments are clearly contractual in nature. The Part B payments are made by the United States much in the same manner as are made by ordinary providers of insurance. They are made only to those individuals who have paid the required premium to enroll in the program ... The payment made when a claim for medical services is submitted to Medicare under the Part B program is thus based on this contractrual [sic] relationship. As a result, a cause of action in contract for restitution and unjust enrichment is available with

respect to such claims. The fact that tortious conduct is also alleged should not change this result. Plaintiff's memo in opposition, at 9 (footnotes and citations omitted).

The government's argument is supported by Section 1870 of the Social Security Act, 42 U.S.C. § 1395gg, which allows the government to recoup from beneficiaries' old-age benefits overpayments made to providers of medical services, but only where "the excess over the correct amount cannot be recouped from [the] provider."

That section has been held to recognize the government's common law right to institute suit against the provider to recoup overpayments. *Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger,* 517 F.2d 329 (5th Cir.), *modified on other grounds,* 522 F.2d 179 (5th Cir.1975), *cert. denied,* 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976); *Szekely v. Florida Medical Association,* 517 F.2d 345 (5th Cir. 1975), *cert. denied,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976). Such a suit is "founded upon a contract and thus is governed by a six-year statute of limitations." *United States v. Pisani,* 646 F.2d 83, 89 (3rd Cir.1981) (suit to recover medicare overpayments made to a nursing home). *See also Szekely,* 517 F.2d at 349 (government "has the right to recoup from providers payments made for unnecessary services more than three years after payment.")

▪ The government's unjust enrichment claim here is thus an exercise of its common law right to recoup funds wrongfully paid to the defendants under the Medicare system. Such a suit is founded upon a contract and is therefore governed by the six year statute of limitations in section 2415(a). *Pisani,* 646 F.2d at 89. Thus the unjust enrichment claim rests on a contractual base, rather than reflecting an attempted expansion of a time-barred tort claim as in *Blusal.*

Accordingly, the motion to dismiss plaintiff's unjust enrichment claim is denied.

## CONCLUSION

The government's motions for partial summary judgment and for leave to serve

a second amended complaint are granted, and defendants' motion is denied.