[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 19, 2010
JOHN LEY
CLERK

_____

No. 09-13922

_____

D. C. Docket No. 08-02336-CV-T-26-TGW

FLORIDA MED CENTER OF
CLEARWATER, INC.,

Plaintiff-Appellant,

versus

KATHLEEN SEBELIUS,
in her official capacity
as Secretary of the
United States Department
of Health and Human Services,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 19, 2010)

Before BLACK, HULL, and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

In this Medicare-fraud case, we must decide whether the Secretary of Health and Human Services properly concluded that payments to a Medicare services provider that had falsified its Medicare enrollment application were an overpayment subject to recoupment. We hold that this conclusion was proper.

## I. Background

In the 1980s, Dr. Surindar S. Bedi was incarcerated for committing a Medicare-related crime. As required by § 1128 of the Social Security Act, the Secretary of Health and Human Services notified Bedi in 1990 that he was excluded from the Medicare program.[1] The Secretary's exclusion letter advised Bedi that he would receive no Medicare payment "for any items or service . . . that he furnished, ordered, or prescribed for the next ten years because of the seriousness of his crime."[2] The letter also explained that

> payment will not be made to any entity in which you are serving as an employee, administrator, operator, or in any other capacity for any services that you furnish, order, or prescribe on or after the effective date of this exclusion. In addition . . . no payment will be made to any supplier wholly owned by you during the exclusion period.

---

[1] Section 1128(a)(1) provides for the mandatory exclusion of "any individual or entity that has been convicted of a criminal offense related to the delivery of an item or service under Title XVIII." 42 U.S.C. § 1320a-7(a)(1). Section 1128(c) states that an exclusion is only effective upon notice to the affected individual. 42 U.S.C. § 1320a-7(c).

[2] Under § 1128(c)(3)(B) of the Social Security Act, the minimum period of exclusion for a program-related crime is five years. 42 U.S.C. § 1320a-7(c)(3)(B).

While these exclusions were still in effect, Bedi became president and 51-percent owner of Florida Medical Center of Clearwater (FMC), a provider of medical services. In 1996, Aaron Stuart, the office manager and 24-percent owner of FMC, submitted a Medicare Provider/Supplier Enrollment Application to the Center for Medicare & Medicaid Services (CMS). This application listed Stuart as the sole owner of FMC and failed to disclose both Bedi's controlling ownership interest and his position as President of FMC. Stuart and Bedi later pleaded guilty to making a misrepresentation in a Medicare enrollment application, in violation of 18 U.S.C. § 1001.

During the time that Bedi owned a controlling stake in FMC, he was never involved in its daily operations, was not an employee, and did not provide any services to FMC or any of its patients. Furthermore, Bedi did not furnish, order, or prescribe any of the services for which FMC submitted Medicare claims. In 1998, Bedi sold his shares in FMC.

In 2001, CMS, acting through Florida Medicare Part B carrier First Coast Options, Inc., notified FMC that it had overpaid FMC by $311,263.13.[3] CMS

---

[3] In administering Medicare Part B, CMS acts through private fiscal agents called "carriers." *See* 42 U.S.C. § 1395u; 42 C.F.R. Part 421, Subparts A and C; *id*. § 421.5(b). Carriers like First Coast are private entities that perform a variety of contractual services, including making coverage determinations, determining reimbursement rates and allowable payments, conducting audits of the claims submitted for payment, and adjusting payments and payment requests. *See* 42 U.S.C. § 1395u(b)(3)(B).

stated that FMC had been ineligible for payment between 1996 and 1998 because Bedi, an excluded provider, had been the majority owner of FMC during that period. First Coast recouped the money by withholding payment on other FMC claims.[4]

FMC appealed CMS's overpayment determination to an administrative law judge (ALJ) and challenged the recoupment. After a hearing, the ALJ upheld CMS's recoupment on two grounds. First, the ALJ determined that CMS had properly recouped the payments because the Secretary had intended to exclude FMC under the mandatory exclusion section of the Social Security Act.[5] *See* 42 U.S.C. § 1320a-7(a)(1). Second, the ALJ concluded that FMC's misrepresentations and omissions in its Medicare enrollment application rendered it ineligible for Medicare payments and justified the recoupment of the fraudulently obtained funds.[6]

---

[4] For reasons of administrative efficiency, carriers typically authorize payment on claims immediately upon receipt of claims, so long as the claims do not contain glaring irregularities. Later, carriers conduct post-payment audits to verify that the payments were proper. *See* 42 U.S.C. § 1395u; 42 C.F.R. § 421.200(a)(2). If the carrier discovers that an overpayment has occurred, the carrier may suspend or recoup payment. 42 C.F.R. § 405.371(a).

[5] The ALJ also concluded that the permissive exclusion section of the Social Security Act, *see* 42 U.S.C. § 1320a-7(b), was inapplicable to FMC.

[6] In the final paragraph of the ALJ's opinion, it held "[t]he money recouped from the appellant was because of a determination that FMC was ineligible from participating in the Medicare program . . . due to . . . the misrepresentations and omissions in its Medicare Provider/Supplier Enrollment Application."

FMC appealed this decision to the Medical Appeals Council, which denied review. FMC then appealed to the district court, which issued an order affirming the Secretary's final decision on both grounds. FMC appeals.

## II. Discussion

Because the Appeals Council denied FMC's appeal, the ALJ's decision is the final decision of the Secretary. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). When "reviewing the Secretary's decisions," we "must abide by those decisions 'unless [they are] arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence in the record taken as a whole.'" *Alacare Home Health Servs., Inc. v. Sullivan*, 891 F.2d 850, 854 (11th Cir. 1990) (alteration in original). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

The Secretary has a common law right to recoup overpayments from Medicare Part B providers. *Szekely v. Fla. Med. Ass'n*, 517 F.2d 345, 349 (5th Cir. 1975).[7] Because payment to an excluded Medicare Part B provider is clearly an

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), this court adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

overpayment, *see* 42 U.S.C. § 1395gg(b)(1), the critical question in this case is whether FMC was excluded from the Medicare Part B program between 1996 and 1998.

First, FMC argues that the ALJ erred in finding that the terms of the letter excluded it from the program under the mandatory exclusion section of the Social Security Act. We agree. Because FMC had not been convicted of any relevant offense, it was not covered by the mandatory exclusion section of the Social Security Act. *See* 42 U.S.C. § 1320a-7(a) (providing mandatory exclusions for "any individual or entity" convicted of various offenses). Instead, as an "entity controlled by a sanctioned individual," FMC was covered by § 1128(b)'s "permissive exclusion" provision. *See id*. § 1320a-7(b)(8). Thus, the Secretary had the discretion to exclude FMC from the Medicare Part B program upon notice. *See* 42 U.S.C. § 1320a-7(c)(1). Here, the Secretary notified Bedi that it was excluding payments (1) to entities for services that he personally furnished or prescribed and (2) to entities wholly owned by Bedi. Because Bedi did not personally furnish or prescribe any Medicare services for FMC and did not wholly own FMC, the terms of the Secretary's exclusion letter did not cover any payments to FMC between 1996 and 1998. We therefore conclude that the ALJ erred in determining that the exclusion letter excluded FMC from Medicare payments

6

under the mandatory exclusion provision.

The ALJ alternatively found that FMC's misrepresentation excluded it from the Medicare program. FMC challenges this conclusion on three grounds. First, FMC challenges the ALJ's legal conclusion that FMC's misrepresentations automatically excluded it from Medicare payments. It argues that a Medicare services provider's misrepresentations only constitute a *permissive* basis for exclusion. *See* 42 U.S.C. § 1320a-7(b)(9) (listing "[f]ailure to disclose required information" in the "[p]ermissive exclusion" section).

We review the ALJ's conclusions of law with deference when it is "apparent from the agency's generally conferred authority and other statutory circumstances that Congress would expect the agency to be able to speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law." *United States v. Mead*, 533 U.S. 218, 229 (2001). In such cases, we must determine whether "Congress has directly spoken to the precise question at issue." *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). If it has not, we "do[] not simply impose [our] own construction of the statute," but instead ask "whether the agency's answer is based on a permissible construction of the statute." *Id*.

Here, the ALJ's legal conclusion requires deference. Although Congress

did not explicitly delegate power to the Secretary to recoup overpayments from Medicare Part B providers by statute, Congress implicitly delegated common law authority to the Secretary to do so. *See Szekely*, 517 F.2d at 348-49. This kind of "implicit" delegation requires *Chevron* deference. *Mead*, 533 U.S. at 229. Furthermore, the relevant statutory framework does not specifically describe when payments to a Medicare services provider are subject to recoupment. *See* 42 U.S.C. § 1395gg(b). Thus, we ask only if the ALJ's legal conclusion was a "permissible construction" of the Secretary's recoupment power. *Chevron*, 467 U.S. at 843. Given that § 1833 of the Social Security Act provides that "[n]o payment may be made . . . for items or services furnished by any disclosing Part B provider unless such provider has provided the Secretary with full and complete information," *id*. § 1320a-3a(a), it was clearly permissible for the ALJ to conclude that FMC's misrepresentations automatically excluded it from the Medicare program and that payments to FMC were therefore subject to recoupment. Thus, we decline to reverse the ALJ's legal conclusion.

Second, FMC argues that the Secretary did not provide sufficient legal reasoning for this conclusion. *See Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986) ("Failure to apply the correct legal standards or to provide the reviewing court with a sufficient basis on which to determine that the correct legal principles

8

have been followed or that substantial evidence exists mandates a reversal.").

This argument is without merit. The ALJ explained in the final paragraph of its opinion that recoupment was justified because of "the misrepresentations and omissions in its Medicare Provider/Supplier Enrollment Application (HCFA Form 855)." The ALJ also explained that given these misrepresentations, "the issue could arise as to whether FMC's participation in Medicare should have been permitted after Dr. Bedi left, absent a new application by FMC." Furthermore, the ALJ cited § 1833 of the Social Security Act in its recitation of the applicable law. Thus, the ALJ applied the correct legal standards and provided enough legal analysis for review.

Third, FMC argues that the Secretary's conclusion was not supported by substantial evidence. This argument also fails. The litigants do not dispute that FMC misrepresented Bedi's controlling interest on its Medicare-enrollment application. This misrepresentation is sufficient to support the conclusion that FMC's material misrepresentation rendered it subject to recoupment.

Finally, FMC argues that the recoupment was an excessive fine in violation of the Eighth Amendment. *See United States v. Bajakajian*, 524 U.S. 321 (1998) (holding that a punitive forfeiture imposed on a criminal defendant was grossly disproportionate to the gravity of the defendant's offense). In particular, it

contends that the Secretary's recoupment was punitive because the government did not sustain any loss from FMC's Medicare services.

"The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin v. United States*, 509 U.S. 602, 609-10 (1993) (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco*, 492 U.S. 257, 265 (1989)).  CMS's recoupment did not seek to punish FMC for its misrepresentation.  Instead, it sought to recover money to which FMC was never entitled.  Thus, the recoupment does not qualify as a punitive fine and cannot violate the Excessive Fines Clause.

Accordingly, we **AFFIRM** the district court's judgment upholding CMS's recoupment.