[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12509
_____

D.C. Docket No. 1:14-cv-22739-JLK


U.S. COMMODITY FUTURES TRADING COMMISSION,

Plaintiff-Appellee,

versus

ROBERT ESCOBIO,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 27, 2020)


Before WILSON, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Robert Escobio appeals the district court's disgorgement award imposed after remand from this Court. He first argues that the Commodities Futures Trading Commission ("CTFC") waived disgorgement by not properly raising it before the first appeal and then argues that it was improperly proved and violated the Excessive Fines Clause.

Because we write for the parties, we assume familiarity with the facts and set out only those necessary for the resolution of this appeal. The CFTC began investigating Southern Trust Metals, Inc., Loreley Overseas Corporation, and Robert Escobio ("Defendants") in response to a customer's complaint. Pursuant to that complaint, the National Futures Association ("NFA")—a private, self-regulatory organization for the futures industry—also began an investigation, which ended in a settlement. Afterwards, the CFTC filed this lawsuit, alleging that the Defendants violated the Commodities Exchange Act ("CEA") when they failed to register as futures commission merchants, transacted the purchase and sale of contracts for the future delivery of a commodity (futures) outside of a registered exchange ("unregistered futures scheme"), and promised to invest customers' money in precious metals but instead invested the funds in so-called "off-exchange margined metals derivatives"("fraudulent metals scheme").

Both parties filed motions for summary judgment.  The district court granted the CFTC's motion in part, holding that the Defendants had conducted off-exchange transactions and had failed to register as futures commission merchants. It denied the Defendants' motion in full.  The CFTC's fraudulent metals scheme claim then proceeded to trial. After a bench trial, the district court found that the Defendants had engaged in fraud, ordered them to pay restitution in the full amount of the customers' losses, and imposed fines.  The court also permanently enjoined the Defendants from employment in the commodities-trading industry. Specifically, the court ordered Defendants pay $1,543,892 as restitution to the investors for the metals derivative scheme and $559,725 as restitution for unregistered futures scheme transactions.

On appeal, we affirmed the judgment but vacated the restitution amount for the unregistered futures scheme because there was insufficient proof of loss.  U.S. Commodities Futures Trading Commission v. Escobio, 894 F.3d 1313, 1331 (11th Cir. 2018).  The Court remanded with instructions:

> "[t]he court may order disgorgement of gains, in appropriate circumstances, without regard to proximate cause.  See 7 U.S.C. § 13a 1(d)(3) ("[T]he court may impose . . . on any person found . . . to have committed any violation[] equitable remedies including . . . disgorgement of gains received in connection with such violation."). The district court may, but need not, consider on remand whether disgorgement is appropriate in the present case."

Id. at 1331-1332.

On remand, the CFTC sought disgorgement via a motion and relied on the existing record.  The CFTC pointed to the district court's findings at summary judgment and trial that $360,337 was the amount of commissions Southern Trust Metals and its broker charged to its futures and options customers, and argued this was the appropriate amount for disgorgement.  The district court agreed and awarded the amount the CFTC sought.

Escobio argues on appeal (1) that the CFTC had abandoned this claim; (2) that there was insufficient proof of the commissions; (3) that he could not be held personally responsible for the disgorgement; (4) that CFTC failed to show that the commissions were proximately caused by the futures violations; (5) that the district court erred by using the same commissions both as a basis for disgorgement and a civil penalty; and (6) that the disgorgement at issue would cause a violation of the Excessive Fines Clause.  We address each argument in turn, and affirm.

## I. WAIVER

First, we reject Escobio's argument that the CFTC did not preserve its request for disgorgement.  Escobio acknowledges that the CFTC requested disgorgement in the amount of $360,334[1] during its closing argument at the bench trial.  He points to no law that supports his claim that this was insufficient to

---

[1]    The CFTC concedes that it misspoke at closing argument when it asked for $360,334 and not $360,337.

preserve the issue.  Further, that there was no waiver when the CFTC failed to pursue disgorgement on appeal is especially understandable in this case, where the CFTC sought and the district court awarded a larger sum in restitution, and this Court in the first appeal – when vacating the larger restitution amount – suggested that disgorgement might be appropriate on remand.  Cf. Mosher v. Speedstar Div. of AMCA Int'l, Inc., 52 F.3d 913 (11th Cir. 1995) (rejecting waiver argument when issue was initially rejected at summary judgment, not raised on first appeal, and then decided on remand).

## II.  SUFFICIENT PROOF OF COMMISSIONS

Turning to Escobio's argument that the CFTC failed to prove the amount ultimately awarded was appropriate, we note that Escobio waived this argument. On summary judgment, before the first appeal, the district court found that Southern Trust Metals charged $360,337 in commissions for its futures customers. On remand, Escobio cited that fact without contesting it; his argument below was merely that he did not personally benefit.  Thus, he waived his ability to contest that determination on appeal.

## III. PERSONAL RESPONSIBILITY FOR THE DISGORGEMENT

Escobio argues that there was no proof that he personally benefitted from the commissions and so should bear no responsibility for the disgorgement.  Like the district court, we reject this argument because Escobio was the controlling person

5

of Southern Trust Metals.  In order to demonstrate control person liability, the Commission must show that Escobio: (1) had "general control" over the primary violator; and (2) lacked good faith, or knowingly induced the acts constituting the violation. CFFC v. RJ Fitzgerald & Co., Inc., 310 F.3d 1321, 1334 (11th Cir. 2002).  Escobio was the CEO and largest shareholder of Southern Trust Securities Holding Corporation ("Holding Corporation").  The Holding Corporation owns Loreley, which in turn owns Southern Trust Metals; Escobio created Southern Trust Metals and served as its director and CEO.   According to the district court, Escobio was "a signatory to ST Metals and Loreley's bank accounts, and had authority to transfer money to and from those accounts."  Further, the evidence at trial showed that Escobio opened Loreley's accounts at Hantec and Berkeley, and was aware of Southern Trust's representations to customers.  This Court, in the earlier appeal, affirmed the district court's findings regarding scienter that Escobio knew he was participating in fraud.  894 F.3d at 1327.[2]

---

[2]    Additionally, for two reasons, Escobio has waived any argument that the commissions should be reduced by expenses so that disgorgement would extend only to net ill-gotten gain. First, although raised and addressed in the district court, and although suggested in the language of a heading in his initial brief on appeal, no such argument was made in the text following that heading, and no authority was cited.  Second, Escobio failed to provide any evidence of what such expenses were or how the amount should be calculated.

## IV.  PROXIMATE CAUSE

Escobio argues that the CFTC failed to show the commissions were proximately related to the futures violation.  The CEA codifies the equitable remedies that may be imposed for violations of the statute.  It reads:

> In any action brought under this section, the Commission may seek, and the court may impose, on a proper showing, on any person found in the action to have committed any violation, equitable remedies including—
>
> > (B) disgorgement of gains received in connection with such violation.

7 U.S.C. § 13a-1(d)(3)(B).  Relying on a case that interprets instead the Securities Exchange Act, Escobio argues that the evidence must show the amount of gains must be causally related to the wrongdoing.  However, § 13a-1(d)(3)(B)'s "in connection" is a more flexible standard.  The district court found that the commissions were charged for its futures transactions; this clearly satisfies the "in connection" standard.

## V.  DISGORGEMENT AND PENALTY

Escobio's argument that the district court erred by awarding both disgorgement of the full amount of the commissions and a civil penalty of one third of the same commissions ignores the plain language of the statute.  The statute permits the award of <u>both</u> disgorgement in the amount of the ill-gotten gains

and a civil penalty in up to three times the monetary gain for each violation.  See 7 U.S.C. §§ 13a-1(d)(1)(A) & (d)(3)(B).

## VI.  EXCESSIVE FINES CLAUSE

We also reject as wholly without merit Escobio's argument that the disgorgement at issue in this appeal would cause the total punishments imposed upon him to violate the Excessive Fines Clause of the Eighth Amendment.  This argument is wholly without merit for numerous reasons of which we need mention only two.  First, the vast majority of the amounts which Escobio asserts are "punishments" for the purposes of the Excessive Fines Clause are comprised of either restitution amounts or the instant disgorgement amount.  We doubt that either of those should be considered a punishment for purposes of the Excessive Fines Clause.  However, we need not decide that because, even assuming they should thus count, they are directly correlated to the scope of the wrongdoing.  In other words, both restitution and disgorgement seek to recover only money to which Southern Trust Metals and/or Escobio were never entitled.  See Fla. Med. Center of Clearwater, Inc. v. Sebelius, 614 F.3d 1276, 1282 (11th Cir. 2010). Thus, the third factor in the traditional excessive fines analysis – the harm caused by the defendant – points strongly against a violation of the Excessive Fines Clause.  Similarly, the second factor – other penalties authorized by the legislature – points strongly against such a violation.  The applicable statute here authorized

civil penalties in the amount of triple the losses suffered by the customers. Whether one considers only the losses suffered by the customers of the futures trades ($559,000+) or whether one also considers Escobio's violations in connection with the fraudulent metals derivatives scheme or violations (an additional $779,000+), the amounts Escobio has been ordered to pay, even assuming all should count as punishments for purposes of the excessive fines clause, total far less than the trebled losses for customers, an amount specifically authorized by the relevant statute.

For the foregoing reasons, the opinion of the district court is

AFFIRMED.