PINE VIEW GARDENS, INC.,
Appellant,

v.

MUTUAL OF OMAHA INSURANCE CO.

No. 71–1010.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 2, 1972.

Decided June 29, 1973.

Marshall H. Brooks, Washington, D. C., for appellant. Mark P. Friedlander, Washington, D. C., was on the brief for appellant.

Walter H. Fleischer, Atty., Dept. of Justice, with whom L. Patrick Gray, III, Asst. Atty. Gen., at the time the brief was filed, Thomas A. Flannery, U. S. Atty., at the time the brief was filed, and Patricia S. Baptiste, Atty., Dept. of Justice, were on the brief for appellee. Morton Hollander, Atty., Dept. of Justice, also entered an appearance for appellee.

Before TAMM and LEVENTHAL, Circuit Judges, and WYZANSKI,* Senior United States District Judge for the District of Massachusetts.

WYZANSKI, Senior District Judge:

Plaintiff, Pine View Gardens Inc., appeals from the District Court's dismissal, presumably on the ground that it fails to state a cause of action, of a complaint against defendant, the Mutual of Omaha Insurance Company.

The abbreviated complaint, without so much as indicating the assumed basis of the District Court's jurisdiction, tells us merely that the parties are, respectively, corporations of Maryland and the District of Columbia, and the amount in controversy exceeds $10,000; that plaintiff qualified with the Social Security Administration "as an extended care fa-

---

* Sitting by designation pursuant to Title 28, U.S.C. § 294(d).

cility" [presumably this means also as a "provider of services" under what is commonly called the Medicare Act, 42 U.S.C. § 1395x(u) (1969)], "and as such was employed and did give such extended care to patients under the policies or contracts [presumably of the patients] with the Defendant"; that in 1967 and 1968 "certain services were furnished and extended care given" [presumably by plaintiff to patients who had policies or contracts with defendant]; that on that account defendant owes plaintiff a balance of $60,137 for 1967 and $49,048 for 1968; and that "plaintiff claims of the defendant the sum of $109,185 with interest."

Defendant's response to the complaint was a motion to dismiss or for summary judgment. The District Court, by order, but without opinion, granted the motion and that is the order now here for review.

We note that the complaint makes no reference to a written contract between the parties. It may be, as plaintiff's brief in this court appears to assume, that the complaint is founded either on an oral contract or on *quantum valebat* and *quantum meruit* claims in quasi contract; and that on such an approach, plaintiff relied on the District Court's diversity jurisdiction under 28 U.S.C. § 1332. Possibly, plaintiff, because its claims relate to services which it, as an extended-care facility, gave to beneficiaries protected by Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., and who were insured by defendant as a carrier and fiscal intermediary under that Act, also relies on the District Court's jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 701 et seq.

We are spared a full, precise recital of the statutory and administrative background of this controversy because it has already been splendidly and accurately done by Circuit Judge Feinberg in a case, which though plainly distinguishable on its merits, is set, in legislative, in executive, and, above all, in relevant time span, in a context fully con-

gruent to that here relevant. Acquavella v. Richardson, 437 F.2d 397 (2nd Cir., 1971). In that suit, brought, as the title emphasizes, against the Secretary of Health, Education, and Welfare, Judge Feinberg observed that, under what is generally denominated the Medicare Act, 42 U.S.C. §§ 1395–1395*ll*, the Secretary of HEW, pursuant to 42 U.S.C. § 1395cc (1969), may make an agreement with a so-called private "extended-care facility" to act as a "provider of services" under 42 U.S.C. § 1395x(u) (1969). The Secretary may also make contracts with insurance companies or like private organizations to act as the government's fiscal intermediary. Through such an intermediary, the Secretary, rather than the patients, reimburses the provider of services for the extended care it has given. There are complicated, safeguarding provisions in the statutes and regulations, which, since Judge Feinberg summarized them, we shall not set forth, and which govern the Secretary's payments, advances, audits, and other controls with respect to the relations between a fiscal intermediary and the Secretary, on the one hand, and the provider of services, on the other hand.

In the case at bar, plaintiff, as a provider of services, is seeking from defendant, as the Government's fiscal intermediary, further reimbursement for extended-care services plaintiff alleges that in 1967 and 1968 it rendered to beneficiaries of the Medicare program.

■ The question initially presented is whether, there being diversity of citizenship between the parties, plaintiff may sue in contract or in quasi contract the defendant insurer. Inasmuch as it is plain from the statutory set-up, and is at least implied in the complaint, that the defendant insurer was a disclosed agent and fiscal intermediary for the Government, and it being incontrovertible that the Government itself has not consented to be sued in this manner, the defendant insurer is immune from this action premised on alleged underpayments. What plaintiff is seeking, indirectly to be sure, is payment by the

Government. Plaintiff sought to avoid the problems of sovereign immunity by casting his complaint against the insurer as though it were the real party in interest, and as if its real principal (the Government) is an undisclosed principal. The statute and regulations, of which we may take judicial notice, make it clear that Mutual is an agent for the Government as a disclosed principal, and preclude our having to deal with the case on the basis of plaintiff's synthetic construct. Were plaintiff to succeed, it would, in effect, be requiring a governmental fiscal agent to make a payment for which, in turn, the agent would reasonably seek, and justly claim, reimbursement from the Government. This is not a case in which the Government has given its fiscal agents funds to pay plaintiff, and in which the agent is not turning the money over to the appropriate ultimate payee. On the contrary, it is an attempt to compel the Government to act, and is, therefore, not within the District Court's diversity jurisdiction. Cf. Larson v. Domestic & Foreign Corp., 337 U.S. 682, 704, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); Kuenstler v. Occidental Life Ins. Co., 292 F.Supp. 532 (C.D.Cal., 1968); Allen v. Allen, 291 F.Supp. 312 (S.D.Iowa, 1968).

A secondary question is whether, though not so pleaded, this complaint may be viewed as an action brought against defendant as a governmental "agency" suable under the Administrative Procedure Act, 5 U.S.C. § 701. It suffices to say that the case was not brought on this theory: that plaintiff has in effect asserted a breach of contract, and not, c. g., an official abuse of discretion or action unsupported by substantial evidence, and hence has not asserted the kind of wrong made cognizable by the Administrative Procedure Act; that there is at least a question whether Mutual is an "agency" within 5 U.S.C. § 701(b)(1); and that we do not think our judicial function requires us to pose and answer questions that would arise from a sweeping reconstitution of the nature of plaintiff's claim.