C. JACK FRIEDMAN, PH.D.
& ASSOCIATES, P.C.

v.

PENNSYLVANIA BLUE SHIELD.

Civ. A. No. 93–0256.

United States District Court,
E.D. Pennsylvania.

Sept. 23, 1993.

Neil E. Jokelson, Neil E. Jokelson & Assoc., P.C., Philadelphia, PA, for plaintiff C. Jack Friedman, Ph.D. & Associates, P.C.

Richard Mentzinger, Jr., Office of U.S. Atty., Philadelphia, PA, for defendant Pennsylvania Blue Shield.

Richard Mentzinger, Jr., Office of U.S. Atty., James G. Sheehan, Asst. U.S. Atty.–Civ. Div., Philadelphia, PA, for interested party U.S.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is defendant United States' ("the government") motion to dismiss or, in the alternative, for summary judgment, plaintiff C. Jack Friedman & Associates' ("Friedman & Associates" or "plaintiff") response, and the government's reply filed thereto. For the reasons set forth below, the court will dismiss counts I and II of the Complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

## I. Background

### A. Procedural History

This action originated on December 17, 1987, when plaintiff filed a praecipe for a writ

1. See note 2, infra.

of summons in the Court of Common Pleas of Philadelphia County, Pennsylvania. A writ of summons was issued the same day and apparently served on Pennsylvania Blue Shield ("Blue Shield"), the named defendant. (Document No. 14, Pltff.'s Ans. to Def.'s M. To Dismiss, ex. B.) Plaintiff, however, did not file a complaint in the Court of Common Pleas until December 14, 1992. The United States, as the real party in interest,[1] removed the complaint to federal court on January 19, 1993. The United States has filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment.

### B. The Medicare Act

For background purposes, this case involves issues dealing with the administration of the Medicare statute. Title XVIII of the Social Security Act, "Health Insurance for Aged and Disabled," 42 U.S.C. §§ 1395–1395ccc (known as the "Medicare Act"), is administered by the Health Care Financing Administration ("HCFA"), a component of the United States Department of Health and Human Services.

The Medicare Act consists of two distinct programs. Part A, titled "Hospital Insurance Benefits for Aged and Disabled," provides insurance coverage for hospital services and related post-hospital home health services, and hospice care. 42 U.S.C. §§ 1395c–1395i–4. Part B, titled "Supplementary Medical Insurance Benefits for Aged and Disabled," is a federally subsidized, voluntary health insurance system, whereby individual Medicare enrollees may assign their right to reimbursement for medical care to their medical service providers. 42 U.S.C. §§ 1395j–1395w–4. Part B supplements Part A's coverage by providing insurance for a portion of some medical expenses, such as certain physician services and X-rays, that are excluded from the Part A program.

Eligible individuals pay monthly premiums if they choose to enroll in Part B. These premiums, together with contributions from the Federal Government, are deposited in the Federal Supplementary Medical Insur-

ance Trust Fund ("Trust Fund") which finances the Part B program.[2]

Under contractual agreements with the HCFA, private health insurance carriers, such as Blue Shield, and defined as "carriers" (for Part B), are charged with the responsibility of administering the benefit provisions of the supplementary insurance programs of Part B. Part of the carrier's responsibility includes determining the amount of payments due to Medicare providers, and auditing the records of providers as may be necessary to insure that payments are made for services actually rendered. *See* 42 U.S.C. §§ 1395h, 1395u; 42 C.F.R. § 421.200.

The Secretary of Health and Human Services administers the Medicare program, including the task of paying Part B claims from the Trust Fund to private insurance carriers experienced in such matters. After Part B enrollees receive medical care, they (or, after their assignment, their medical providers) bill the private insurance carrier. If the carrier determines that a claim meets all of Part B coverage criteria, such as medical necessity and reasonable cost, the carrier pays the claim out of the Trust Fund. *See* 42 U.S.C. § 1395u. If the carrier decides that reimbursement in full is not warranted, the statute and the regulations designate an appeal procedure available to dissatisfied claimants.

A dissatisfied claimant may request a "review determination" which is a *de novo* written review hearing before a carrier employee different from the one who initially decided the claim. Claimants who remain dissatisfied and whose appeal involves more than $100.00 may then petition for an oral hearing before a hearing officer designated by the carrier. *See* 42 U.S.C. § 1395u(b)(3)(C). Unless the carrier or the hearing officer decides to reopen the proceeding, the hearing officer's decision is "final and binding upon all parties to the hearing. . . ." 42 C.F.R. § 405.835 (1980). Neither the statute nor the Secretary's regulations make any further provision for review of the hearing officer's decision. *See United States v. Erika, Inc.,* 456 U.S. 201, 203, 102 S.Ct. 1650, 1652, 72 L.Ed.2d 12 (1982).

Finally, a carrier may suspend payments to a provider where the "circumstances giving rise to the need for a suspension of payments involves fraud or willful misrepresentation." *See* 42 C.F.R. § 405.371. The carrier is not required to provide prior notice of suspension where such suspension is pursuant to section 405.371, but it is required to provide notice after suspension has occurred. *Id.*

### C. *Facts*

In this case, Friedman & Associates was a Part B medical service provider who allegedly provided psychological testing, which may be a covered health service under Medicare Part B when performed under the direction of a physician. *See* 42 C.F.R. § 424.24(f). Friedman & Associates alleges that Blue Shield owes it more than $500,000.00 for services which it rendered for Medicare patients from approximately November 1980 until June 1984. (Complaint, ¶ 4.)

Friedman & Associates also alleges that, during this time, employees of Blue Shield provided false and misleading information to the United States Attorney's Office that resulted in an investigation and subsequent civil suit against Friedman & Associates and others for violation of the False Claims Act, 31 U.S.C. § 3729 *et seq. See United States v. Friedman, et al.,* Civil Action No. 86–3166. The United States Attorney settled that case before it went to trial.

As part of the settlement, Friedman & Associates and the other defendants voluntarily withdrew from the Medicare program

---

**2.** From the allegations in the complaint, it is readily apparent that the named defendant Blue Shield was acting as a Medicare carrier under Part B. *See* 42 U.S.C. § 1395u(f); 42 C.F.R. § 421.3. Moreover, in any litigation involving the administration of the Medicare program by a carrier, the HCFA is the real party in interest. *See* 42 C.F.R. § 421.5(b). Finally, as a carrier administering payments under Part B of the Medicare Act, Blue Shield has no financial stake in whether a particular claim is denied or approved because any payment for claims is made from the Trust Fund. *See* 42 U.S.C. § 1395t. Thus, since this action involves the administration of the Medicare program by Blue Shield, the United States or HCFA, and not Blue Shield, is the real party in interest.

for five years and paid a total of $200,000.00 to the United States. (Document No. 4, *Def.'s M. to Dismiss*, ex. C.) Moreover, as part of the same settlement, the defendants released all claims they had against the United States arising out of the matters set forth in the complaint, including, but not limited to, the counterclaim which Friedman & Associates had asserted against the United States. *Id.*[3]

## II. Standard for Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1)

■ A district court can grant a dismissal pursuant to Fed.R.Civ.P. 12(b)(1) based on the legal insufficiency of a claim. Dismissal is proper only when the claim clearly appears to be immaterial and solely for the purpose of obtaining jurisdiction, or is wholly insubstantial and frivolous. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408–09 (3d Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). *See also Lunderstadt v. Colafella*, 885 F.2d 66, 70 (3d Cir.1989) (court may dismiss for lack of jurisdiction only if the claims are "insubstantial on their face") (citations omitted). When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion. *Kehr Packages*, 926 F.2d at 1409 (citing *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). Finally, when considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988) (citations omitted),

*cert. denied*, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989).

## III. Discussion

### A. Count I of the Complaint

■ Friedman & Associates claim that Blue Shield wrongly withheld benefits owing to Friedman & Associates for medical services provided. However, as stated above, review of benefit determinations concerning Medicare Part B claims is governed by 42 U.S.C. § 1395u(b)(3)(C), which provides for "a fair hearing by the carrier." Neither the statute nor the federal regulations governing Part B of the Medicare Act provide for any further judicial review. Indeed, in *United States v. Erika, Inc.*, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), the Supreme Court concluded that, in view of the legislative history and the language of the statute, Congress deliberately intended to foreclose judicial review of benefit amount determinations. *Id.* at 208, 102 S.Ct. at 1654. This court, therefore, lacks subject matter jurisdiction over the alleged unpaid benefits that form the basis of count I of the Complaint.[4] *See also American Ambulance Serv., Inc. v. Sullivan*, 911 F.2d 901, 904–05 (3d Cir.1990).

Friedman & Associates, however, argues that Blue Shield did not comply with the proper administrative procedures necessary to deny its claims for benefits because it did not formally holding the required hearing, and that this, in some way, creates subject matter jurisdiction for the court. The court disagrees.

Blue Shield, in a letter dated November 17, 1982, first notified Friedman & Associates that his benefit claims were under inves-

---

**3.** The Stipulation for Settlement provides in pertinent part:

Defendants release and give up any and all claims which they or any of them have or may have had against the United States arising out of the matter stated in this action; or in the Counterclaim asserted against the United States, or any other claims against Plaintiff arising out of the operation of Creative Human Services, except tax claims under Title 26, U.S.Code.

*Id.* at ¶ 11.

**4.** The Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–509, § 9341 amended the

Medicare Act to provide a limited right to judicial review of providers' claims for Part B services. However, Congress specifically limited judicial review under the new provisions to claims involving items or services furnished on or after January 1, 1987. Thus, because plaintiff's claims are for services allegedly provided from 1980 to 1984, plaintiff is not entitled to judicial review under these new provisions. *See Friedrich v. Secretary of Health and Human Servs.*, 894 F.2d 829, 832–33 (6th Cir.), *cert. denied*, 498 U.S. 817, 111 S.Ct. 59, 112 L.Ed.2d 34 (1990).

tigation. Subsequently, Blue Shield, in a second letter dated March 7, 1883, notified Friedman & Associates that any benefits pending or future assigned Medicare claims would not be paid out, upon instruction by the Office of Inspector General, until billing irregularities could be resolved. (Document No. 15, *Def.'s Reply Brief,* exs. C & D.)

■ In this way, Blue Shield complied with the requirements of 42 C.F.R. § 405.-371(b), which permit a carrier to suspend payments without first notifying the provider of an intention to suspend payments where there is reliable evidence that the "circumstances giving rise to the need for a suspension of payments involves fraud or willful misrepresentation." Furthermore, Blue Shield, in its March 7, 1983 letter to Friedman & Associates, complied with section 405.371(b)'s requirement that the provider be notified of a suspension, once it has occurred, and the reasons for the suspension. *Cf. Eisenberg v. Mathews,* 420 F.Supp. 1274, 1278 (E.D.Pa.1976) (federal defendants cannot be held liable in damages for properly following the rules and regulations promulgated in 20 C.F.R. § 405.373(c)).

■ Furthermore, even in the event that Blue Shield did not follow the proper administrative procedures, the court is at a loss how such failure creates subject matter jurisdiction for this court to review the benefit determination of Blue Shield. Indeed, where a provider of medical services under Part B is dissatisfied with a carrier's determination of benefits owed, it is the provider's responsibility to file a written request for a hearing. 42 C.F.R. § 405.820(a). Friedman & Associates never requested such a hearing after receiving the letter from Blue Shield notifying it of the suspension of its benefit payments. (Document No. 4, ex. D, Affidavit of C. David Tress, Senior Hearing Officer.) Any determination by Blue Shield, upon the instruction of the Office of Inspector General,

therefore, became a final binding decision, from which there can be no judicial review.

■ Finally, even if the court had jurisdiction to review claims for unpaid benefits, the government and Blue Shield are immune from suit based on the doctrine of "sovereign immunity." As noted above, the United States is the real party in interest in actions against Medicare carriers as the recovery of benefits would come from the federal treasury. *See* note 2, *supra; Pine View Gardens, Inc. v. Mutual of Omaha Ins. Co.,* 485 F.2d 1073, 1075 (D.C.Cir.1973).

■ Blue Shield suspended payments to Friedman & Associates out of a concern regarding certain billing irregularities. Plaintiff's claim for unpaid benefits, therefore, involves the functions of a Medicare carrier acting in its capacity as an agent for the United States and thus, because the government did not consent to be sued, the claim is barred by sovereign immunity. *See Anderson v. Occidental Life Ins. Co.,* 727 F.2d 855 (9th Cir.1984) (citing *Matranga v. Travelers Ins. Co.,* 563 F.2d 677 (5th Cir. 1977)); *Guntz v. Pennsylvania Blue Shield,* Civil Action No. 90–5743, 1991 WL 1779, 1991 U.S.Dist. LEXIS 261 (E.D.Pa.1991); *Neurological Associates–H. Hooshmand v. Bowen,* 658 F.Supp. 468, 472 (S.D.Fla.1987). Applying sovereign immunity in this context helps to promote the public interest in encouraging vigorous exercise of official authority and effective governance. *Barr v. Matteo,* 360 U.S. 564, 571, 79 S.Ct. 1335, 1339, 3 L.Ed.2d 1434 (1959) ("It is important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties....") Accordingly, the court also lacks subject matter jurisdiction over count I of the Complaint pursuant to the doctrine of sovereign immunity.[5]

---

**5.** Plaintiff relics primarily on *Rochester Methodist Hos. v. Travelers Ins. Co.,* 728 F.2d 1006 (8th Cir.1984). In *Rochester,* the court declined to apply the doctrine of sovereign immunity to a fiscal intermediary, such as Blue Shield, because plaintiff had alleged and proved fraud before the Provider Reimbursement Review Board. *Id.* at 1016. In this case, however, plaintiff has not

made any allegations of fraud. *See* Fed.R.Civ.P. 9(b) ("In averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). Rather, Friedman & Associates only alleges that Blue Shield failed to comply with federal regulations and pay Friedman & Associates for medical services it provided.

### B. *Count II of the Complaint*

■ In count II of the Complaint, plaintiff alleges that employees of Blue Shield, acting within the scope of their authority, supplied materially false information to the United States Attorney's Office causing loss of reputation and business. The complaint alleges that agents, servants and/or employees of Blue Shield wrongfully instigated a criminal investigation of Friedman & Associates by affirmative misrepresentations and by material omissions of fact. The government asserts that Blue Shield is protected from such tort claims based, among other things, on the doctrine of sovereign immunity. The court agrees.

A medical carrier, acting pursuant to the Medicare Act and on behalf of the HCFA, enjoys immunity from common law tort liability for actions within the scope of its authority. *See Bushman v. Seiler*, 755 F.2d 653 (8th Cir.1985) (consultant for Medicare carrier, who allegedly slandered a provider of medical services, enjoys sovereign immunity for actions within scope of authority).[6] Indeed, even the lower echelon employees of a medical carrier are entitled to immunity for activities "committed by law to his control or supervision." *Peterson v. Weinberger*, 508 F.2d 45, 51 (5th Cir.), *cert. denied*, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975).

The test of whether an official is acting within the scope of his authority is whether the "act has more or less connection with general matters committed by law to the officer's control or supervision, and is not manifestly or palpably beyond his authority." *Norton v. McShane*, 332 F.2d 855, 859 (5th Cir.1964), *cert. denied*, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965). *See also Watson v. Barker*, 428 F.Supp. 590, 592 (W.D.Pa. 1977) ("doctrine of official immunity provides that government officials enjoy an absolute privilege from civil liability should the activity in question fall within the scope of their

authority and the action undertaken requires the exercise of discretion."). Moreover, the Supreme Court has emphasized that, as a matter of public policy, sovereign immunity must be preserved so that federal officials can effectuate the policies necessary for effective governance. *Barr v. Matteo*, 360 U.S. 564, 571, 79 S.Ct. 1335, 1339, 3 L.Ed.2d 1434 (1959).

In this case, a part B carrier, such as Blue Shield, should not be concerned about defending possible tort claims for activities it has performed in furtherance of its duty as an agent for the United States. Indeed, Blue Shield is required by government regulation to audit the records of providers to ensure that payments are made properly. 42 C.F.R. § 421.200(e).

Thus, where concerns arise in regard to certain billing methods of medical providers, it is certainly within the authority and duty of Blue Shield to notify the proper parties of the billing irregularities. The alleged tortious acts were committed by agents of the United States who were responsible for the integrity of the Medicare program during the course of an investigation of purported violations of the Medicare Act. As the *Bushman* court stated: "Applying immunity here is consistent with protecting officials who are required to exercise their discretion and promoting the public interest in encouraging the vigorous exercise of official authority." 755 F.2d at 656 (citations omitted). Accordingly, Blue Shield employees, acting within the scope of their authority, enjoy sovereign immunity from tort claims. Thus, count II of the Complaint will be dismissed.

### IV. *Conclusion*

For the foregoing reasons, the court will grant the government's motion to dismiss counts I and II of the Complaint pursuant to Fed.R.Civ.P. 12(b)(1), as the claims are

---

**6.** In *Bushman*, plaintiffs filed a libel and slander action against a consultant employed by a Medicare carrier for the Department of Health and Human Services. The plaintiffs alleged that the consultant libelled and slandered them by sending a letter to plaintiffs' insurer which stated:
It would seem that the doctors Bushman have determined that anyone who reaches the age

where they are covered by Medicare has peripheral vascular disease. Obviously, these patients do not have the peripheral vascular status that they had when they were thirty years old, but it does not necessarily mean that they are diseased.
*Id.* at 654.

barred from judicial review for lack of subject matter jurisdiction.