**Kailash C. PANI, M.D., and Kailash C. Pani, M.D., P.C., Plaintiffs–Appellants,**

v.

**EMPIRE BLUE CROSS BLUE SHIELD, Defendant–Appellee.**

**Docket No. 97–7086**

United States Court of Appeals, Second Circuit.

Argued Jan. 5, 1998.

Decided July 24, 1998.

---

Arthur R. Block, New York City, for Plaintiffs–Appellants.

Jeffrey D. Chansler, New York City (Kathleen L. Ames, Office of Jeffrey D. Chansler, New York City, Of Counsel), for Defendant–Appellee.

Gideon A. Schor, Assistant United States Attorney (Mary Jo White, United States Attorney for the Southern District of New York, Steven M. Haber, Assistant United States Attorney, Of Counsel), for Amicus Curiae United States of America.

Before: VAN GRAAFEILAND and WALKER, Circuit Judges, and KOELTL, District Judge.*

JOHN M. WALKER, JR., Circuit Judge:

This appeal raises the issue of whether a private insurance company is entitled to official immunity when acting as a fiscal intermediary or a carrier on behalf of the United States in the administration of a Medicare program. We hold that a fiscal intermediary or carrier is immune from suit for torts that arise out of the performance of its duty to investigate and report possible Medicare fraud.

## BACKGROUND

Plaintiff-appellant Kailash C. Pani, M.D., a neurosurgeon and sole principal in plaintiff-appellant Kailash C. Pani, M.D., P.C. (collectively "Pani"), maintained a medical practice in Tarrytown, New York. Defendant-appellee Empire Blue Cross Blue Shield ("Empire") was the Medicare carrier for Westchester County under contract to the Department of Health and Human Services ("HHS"). Under the Medicare Act, 42 U.S.C. § 1395 et seq., a "carrier" is a private insurance company that contracts with HHS to administer claims submitted under the Medicare "Part B" program, a voluntary supplemental medical insurance program,

* The Honorable John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

while a "fiscal intermediary" is a private insurance company that contracts with HHS to administer major medical claims under the Medicare "Part A" program. *See* 42 U.S.C. §§ 1395h(a), 1395u(a). As a carrier, Empire was responsible for processing Medicare claims submitted by health-care providers, including assigning authorization codes, making payments, and reviewing claims for possible fraud. *Id.*

Between September 1981 and February 1983, Pani submitted Medicare claims to Empire for a procedure Pani called a "facet rhizotomy." At first Pani submitted claims that did not contain a procedure code. After Empire's claims department assigned the code "5211," a code for rhizotomy, to these claims based on the procedure described by Pani, Pani submitted several more claims using that code number.

Sometime in 1983, Empire reported to HHS that it suspected Pani had submitted claims for procedures he had not performed or for procedures that were not "facet rhizotomies." Following an investigation by the United States Attorney's Office, Pani was indicted on nine counts of mail fraud, in violation of 18 U.S.C. §§ 1341–42; 63 counts of filing false claims against the government, in violation of 18 U.S.C. § 287; and 50 counts of conversion of government funds, in violation of 18 U.S.C. § 641. *See United States v. Pani,* 717 F.Supp. 1013, 1014 (S.D.N.Y.1989). Pani was ultimately convicted, following a bench trial, on four counts of mail fraud, three counts of making false claims, and three counts of conversion. *See id.* The district judge acquitted Pani on the remaining counts finding that Empire "certainly had an obligation to find out more about what they were approving, and they were … on warning that these were not rhizotomies, surgical rhizotomies, performed in a hospital." *United States v. Pani,* 83 CR. 0735, Hearing tr. at 10–11 (S.D.N.Y. May 14, 1984). In subsequent proceedings, Pani was found liable to the federal government for civil damages under the False Claims Act, 31 U.S.C. §§ 3729–31, and convicted in a state prosecution for Medicaid fraud. *See United States v. Pani,* No. 86 Civ. 4970, slip op. at 5–6 (S.D.N.Y. Oct. 15, 1991); *United States v.*

*Pani,* 717 F.Supp. 1013, 1019 (S.D.N.Y.1989); *People v. Pani,* 138 A.D.2d 532, 525 N.Y.S.2d 912 (N.Y.App.Div.1988).

In October of 1993, Pani filed suit in New York state court against Empire. Pani's complaint sought $10 million based on claims for (1) negligence; (2) tortious interference with contractual relations; and (3) breach of contract arising out of Empire's report to the United States government of possible fraud by Pani. Empire removed the action to federal district court pursuant to 28 U.S.C. §§ 1441(b) and 1442(a)(1), which permits removal by "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office."

Empire's initial answer asserted that Pani had failed to state a claim and that Pani's claims were barred by the statute of limitations. On April 18, 1995, the United States moved to be substituted as the proper party defendant, or, alternatively, to be allowed to intervene pursuant to Fed.R.Civ.P. 24. The United States also moved to dismiss Pani's complaint under Fed.R.Civ.P. 12(b)(1) and (6) for lack of subject matter jurisdiction, for failure to state a claim, and because Pani's claims were barred by the statute of limitations, or, in the alternative, for summary judgment. On the same day, Empire sought leave to file an amended answer in order to assert official immunity as an additional defense and moved to dismiss the complaint for the reasons submitted in the government's brief.

The United States District Court for the Southern District of New York (Sidney H. Stein, *Judge* ) granted Empire's motion to dismiss and denied the government's motion as moot. *Pani v. Empire Blue Cross Blue Shield,* No. 93 Civ. 8215, 1996 WL 734889 (S.D.N.Y. Dec. 23, 1996). Pani's breach of contract claim was dismissed for lack of subject matter jurisdiction, pursuant to Fed R. Civ. P. 12(b)(1) and 42 U.S.C. § 1395u(b)(3)(c). *Id.,* 1996 WL 734889 at *3. The claim for tortious interference with contractual relations was dismissed because Pani had failed to establish the *prima facie* ele-

ments of the tort. *Id.*, 1996 WL 734889 at *2. Finally, the district court dismissed Pani's claim for negligence on the ground of official immunity, and added that immunity provided an alternative basis for dismissing Pani's other claims. *Id.*, 1996 WL 734889 at *3–*5.

On appeal Pani challenges the dismissal of his negligence and tortious interference claims, but not the dismissal of his breach of contract claim. Pani contends, *inter alia,* that Empire is not entitled to official immunity and that even if it is, it was procedurally improper for the district court to dismiss his complaint on that basis under Rule 12(b)(6). He also argues that the district court abused its discretion in dismissing his complaint without granting him leave to amend.

### DISCUSSION

■ We review the dismissal of a complaint under Rule 12(b)(6) *de novo,* taking as true the material facts alleged in the complaint and drawing all reasonable inferences in favor of the plaintiff. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996); *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697, 699–700 (2d Cir.1994). A dismissal under Rule 12(b)(6) for failure to state a cognizable claim may be affirmed only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Citibank, N.A. v. K–H Corp.,* 968 F.2d 1489, 1494 (2d Cir.1992); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A. Official Immunity

■ The district court dismissed Pani's claim for negligence on the ground that Empire was entitled to official immunity for acts taken in its capacity as a Medicare carrier. In doing so, however, the district court re-

characterized—and enlarged—Pani's claim for negligence, probably based on Pani's own recharacterization of that claim at oral argument. Pani's complaint confined Empire's alleged wrongdoing to investigating and reporting Pani for fraud. It alleged that Empire had "duly assigned a procedure code" of 5211 to the facet rhizotomy claims submitted by Pani and not that the code assigned was improper or that Empire had failed to follow proper administrative procedures in assigning the code.[1] The district court, however, described Pani's claim as one for negligence "for assigning [Pani] an improper billing code, for failing to verify that code with HHS, and for subsequently reporting to HHS that Pani had filed fraudulent reimbursement claims using that same code." *Pani,* 1996 WL 734889, at *4.

■ We limit our review, as we must, to the allegations contained within the four corners of Pani's complaint. *See Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996)(" '[i]n considering a motion to dismiss for failure to state a claim ... a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference' " (quoting *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991))); *Jojola v. Chavez,* 55 F.3d 488, 494 (10th Cir.1995) (same); *Palda v. General Dynamics Corp.,* 47 F.3d 872, 875 (7th Cir.1995) (same); *Doyle v. Oklahoma Bar Ass'n,* 998 F.2d 1559, 1566 (10th Cir.1993) (same). Accordingly, the only issue before us is whether a Medicare carrier is entitled to official immunity for the performance of its duty to investigate and report possible fraud.

Several circuits have held that a fiscal intermediary or carrier is entitled to sovereign immunity on the rationale that the suit

1. Pani's complaint, in pertinent part, reads as follows:

8. That claims for reimbursement were submitted by PANI for the performance of the said facet rhizotomy procedure regarding which EMPIRE duly assigned a procedure code thereto, namely code no. "5211".

9. That following payment of said claims, EMPIRE improperly, intentionally, carelessly, recklessly and/or negligently sought repayment from and sanctions against PANI, wherein defendant represented that the said claims were fraudulent and fictitious, when EMPIRE knew or should have known that such claims were valid, due and owing.

10. That the said representations by EMPIRE which were made to HHS regarding the validity of the aforestated claims submitted by PANI, were wholly false and untrue.

at issue is really one against the United States because the fiscal intermediary or carrier is a government agent that "act[s] on behalf of the [Medicare] Administrator in carrying out certain administrative responsibilities that the law imposes" and is entitled to indemnification from the United States, which, therefore, is "the real party of interest." 42 C.F.R. 421.5(b); *see, e.g., Brooks v. Blue Cross and Blue Shield,* 116 F.3d 1364, 1382–83 (11th Cir.1997) (fiscal intermediary entitled to sovereign immunity only to the extent that government is exposed to financial risk); *Anderson v. Occidental Life Ins. Co.,* 727 F.2d 855, 856–57 (9th Cir.1984) (per curiam) (claim for negligent infliction of mental anguish by medicare carrier barred by sovereign immunity); *Matranga v. Travelers Ins. Co.,* 563 F.2d 677 (5th Cir.1977) (per curiam) (sovereign immunity prevented action against intermediary for alleged misconduct in processing claims); *Peterson v. Weinberger,* 508 F.2d 45, 51–52 (5th Cir.1975) (sovereign immunity applied to claim of alleged wrongful suspension of payments for fraud); *Pine View Gardens, Inc. v. Mutual of Omaha Ins. Co.,* 485 F.2d 1073, 1074–75 (D.C.Cir.1973) (claim for unpaid benefits barred by sovereign immunity).

Fewer circuit courts have decided the issue of whether fiscal intermediaries and carriers are entitled to official immunity for discretionary acts taken within the scope of their authority under the Medicare Act. *See, e.g., Bushman v. Seiler,* 755 F.2d 653, 655–56 (8th Cir.1985) (official immunity granted to consultant of Medicare carrier for reporting fraud to carrier); *Peterson v. Blue Cross/ Blue Shield,* 508 F.2d 55, 58 (5th Cir.1975) (holding by implication that employee of both fiscal intermediary and carrier was entitled to official immunity in connection with suspension of payments for fraud). Several district courts, however, have held that fiscal intermediaries and carriers are entitled to official immunity. *See, e.g., Midland Psychiatric Assocs. v. United States,* 969 F.Supp. 543, 551–52 (W.D.Mo.1997) (carrier entitled to official immunity for alleged wrongful denial of benefits); *C. Jack Friedman, Ph.D. & Assocs., P.C. v. Pennsylvania Blue Shield,* 836 F.Supp. 263, 268 (E.D.Pa.1993) (carrier entitled to official immunity for claims based

on its report of fraud); *Livingston v. Blue Cross and Blue Shield,* 788 F.Supp. 545, 549–50 (S.D.Ala.1992) (fiscal intermediary entitled to official immunity for claims arising from intermediary's instigation of fraud prosecution); *Group Health Inc. v. Blue Cross Ass'n,* 739 F.Supp. 921, 932–33 (S.D.N.Y. 1990) (fiscal intermediary entitled to official immunity for claims based on negligent misrepresentations).

In *Westfall v. Erwin,* 484 U.S. 292, 295–97, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), the Supreme Court held that a federal official is shielded from state-law tort liability for acts that are discretionary in nature and fall within the outer perimeter of the official's duties. As *Westfall* made clear, the determination of whether immunity should apply requires a functional inquiry: "immunity attaches to particular official functions, not to particular offices." *Id.* at 296 n. 3, 108 S.Ct. 580. The rationale behind such immunity is a concern that "the threat of liability will make federal officials unduly timid in carrying out their official duties, and that effective government will be promoted if officials are freed of the costs of vexatious and often frivolous damages suits." *Id.* at 295, 108 S.Ct. 580.

The application of the *Westfall* test to federal officials was superseded by Congress's passage in 1988 of the Federal Employees Liability Reform and Tort Compensation Act, also known as the Westfall Act, which eliminated the requirement that the acts be discretionary. *See* 28 U.S.C. § 2679(d). However, the *Westfall* test remains the framework for determining when nongovernmental persons or entities are entitled to the same immunity. *See Mangold v. Analytic Servs., Inc.,* 77 F.3d 1442, 1446–50 (4th Cir. 1996); *Slotten v. Hoffman,* 999 F.2d 333, 336 (8th Cir.1993); *Midland Psychiatric,* 969 F.Supp. at 551–52.

If Empire had been an actual federal official, it unquestionably would have been entitled to official immunity for investigating and reporting possible fraud. *See Peterson v. Weinberger,* 508 F.2d at 50–51 (finding government integrity specialist officially immune because it was his responsibility to investigate claims of fraud and abuse and there was

no evidence that he had acted beyond his scope of employment); *Mangold,* 77 F.3d at 1447 (recognizing as a general matter that official immunity would protect official decisions to investigate suspected fraud in the administration of government contracts).

■ The policy considerations underlying the extension of official immunity to a federal official's duty to investigate and report suspected fraud apply with equal force to a fiscal intermediary or carrier. "The complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions, and we cannot say that these functions become less important simply because they are exercised by officers of lower rank in the executive hierarchy" or by private contractors. *Barr v. Matteo,* 360 U.S. 564, 572–73, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *see also Mangold,* 77 F.3d at 1447–48 (concluding that official immunity attaches to discretionary governmental functions even when they have been delegated to the private sector); *cf. Boyle v. United Techs. Corp.,* 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) (finding that "[i]t makes little sense to" hold government contractor liable for design defects in military equipment when government would have been shielded from liability had it produced the defective equipment itself). "Even though private persons under contract with the government act only partly in the public sphere, the public interest may demand that immunity protect them to the same extent that it protects government employees." *Mangold,* 77 F.3d at 1447.

The investigation and reporting of possible Medicare fraud is precisely the type of delegated discretionary function that the public interest requires to be protected by immunity. Medicare fraud exacts an enormous toll on the public fisc—estimated losses from fraud and other improper Medicare payments exceed $20 billion a year. *See* Department of Health and Human Services, *CFO Audit Action,* 1998 WL 213154 (Apr. 24, 1998). The carriers and fiscal intermediaries that administer the millions of Medicare claims filed annually are indispensable components of the governmental program and are in a unique position to combat the drain on public resources caused by fraudulent claims. *See Group Health Inc.,* 739 F.Supp. at 933 ("HHS and the Secretary rely heavily on the participation of fiscal intermediaries, who possess accounting and health care expertise, in order to efficiently administer the [Medicare] program."); *see generally United States v. Erika, Inc.,* 456 U.S. 201, 203, 208 n. 11, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982) (discussing efficiency of having private insurance companies pay Medicare claims and volume of Medicare claims). The public interest in having Medicare fraud detected and prevented would be thwarted if these non-government entities, who have no personal financial interest in detecting or preventing Medicare fraud, were to find themselves facing damages suits for their efforts in doing so. *See* 42 U.S.C. § 1395t; *cf. Friedman,* 836 F.Supp. at 265 n. 2 (noting that carriers have "no financial stake in whether a claim is denied or approved because any payment for claims is made from the [Federal Supplementary Medical Insurance Trust Fund]").

Pani's reliance on *Rochester Methodist Hosp. v. Travelers Ins. Co.,* 728 F.2d 1006 (8th Cir.1984), for the proposition that Empire is not entitled to immunity because it acted beyond the scope of its authority is misplaced. In *Rochester,* the Court of Appeals for the Eighth Circuit held that a fiscal intermediary was not entitled to sovereign immunity because it had engaged in fraudulent acts that were beyond the scope of its authority and, therefore, the suit was not in fact one against the United States. *Id.* at 1012–16. The parties did not argue, and the court did not decide, whether Travelers might have been entitled to official immunity. The issue before us, however, is official, not sovereign, immunity. Moreover, a carrier or fiscal intermediary's decision to investigate a particular provider for fraud or to report that provider to the relevant authorities is clearly conduct within the outer perimeter of his authority, *see* 42 U.S.C. §§ 1395h, 1395u; 42 C.F.R. § 405.371(b) (authorizing carriers to suspend payments under circumstances involving fraud or willful misrepresentation); 42 C.F.R. § 421.200 (nonexhaustive list of carrier responsibilities); *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.,* 903 F.2d

480, 482 n. 3 (7th Cir.1990) (cataloguing responsibilities); *Friedman,* 836 F.Supp. at 265 ("[p]art of the carrier's responsibility includes ... auditing the records of providers as may be necessary to insure that payments are made for services actually rendered"); *Livingston,* 788 F.Supp. at 550 (noting that contract between Blue Cross and HHS "charges the intermediary with the duty to investigate and report suspected instances of fraud and abuse"), and is plainly discretionary in nature, *see Bushman,* 755 F.2d at 656; *Friedman,* 836 F.Supp. at 268; *Group Health,* 739 F.Supp. at 932. In short, *Rochester* has no bearing on this case.

We also reject Pani's contention that the recent Supreme Court case of *Richardson v. McKnight,* —— U.S. ——, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997), precludes a grant of official immunity to a private company. *Richardson,* which held that prison guards employed by private management companies were not entitled to qualified immunity, is distinguishable in several respects. *Richardson* involved a § 1983 action for constitutional violations; the defendants were employees of a private for-profit company; the conduct at issue was held not to be an essential or traditional government function; and the Court expressly stated that its holding was a narrow one and did "not involve a private individual ... serving as an adjunct to government in an essential government activity." *Id.* at ——, 117 S.Ct. at 2108. In contrast, the case at hand involves state-law tort claims; fiscal intermediaries and carriers operate under not-for-profit contracts with the federal government; and, in performing their duty of investigating and reporting instances of public fraud, fiscal intermediaries and carriers are acting as adjuncts to the government and are carrying out a traditional government function. Carriers and fiscal intermediaries

> act on behalf of the Administrator in carrying out certain administrative responsibilities that the law imposes. Accordingly, their agreements and contracts contain clauses providing for indemnification with respect to actions taken on behalf of HCFA and HCFA is the real party of

interest in any litigation involving the administration of the program.

42 C.F.R. § 421.5(b).

We are, of course, mindful that "absolute immunity ... has its costs, since illegal and even offensive conduct may go unredressed," *Mangold,* 77 F.3d at 1446–47, and that the Supreme Court has admonished courts "to consider whether the contribution to effective government in particular contexts outweighs the potential harm to individual citizens." *Westfall,* 484 U.S. at 299–300, 108 S.Ct. 580 (citing *Doe v. McMillan,* 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973)). We believe, however, that the public interest in combating Medicare fraud outweighs the individual costs of granting immunity, that the threat of liability will make fiscal intermediaries and carriers unduly timid in carrying out their official duty to investigate and report suspected fraud, and that effective government will be promoted if fiscal intermediaries and carriers are freed of the costs of vexatious and often frivolous damages suits that may arise from such conduct. *See id.* at 295, 108 S.Ct. 580. Because our review is limited to the allegations made in Pani's complaint pertaining to the reporting of fraud, we do not reach the issue of whether official immunity would apply to other conduct of a Medicare carrier or fiscal intermediary.

*B. Propriety of 12(b)(6) Dismissal on Grounds of Official Immunity*

■ Pani argues that even if a fiscal intermediary might be shielded by official immunity, it was improper for the district court to dismiss the case at the pleading stage on the basis of official immunity. We disagree.

■ An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint. *See ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994); 5A Wright & Miller, *Federal Practice and Procedure* §§ 1277, 1357 (2d ed. 1990 & Supp.1998); *see also Day v. Moscow,* 955 F.2d 807, 811 (2d Cir.1992) (res judicata); *Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir.1989) (statute of limitations); *Green v. Maraio,* 722 F.2d 1013, 1018–19 (2d

Cir.1983) (qualified immunity). It is also well established that an affirmative defense of official immunity should be resolved as early as possible by the court, *see Siegert v. Gilley,* 500 U.S. 226, 232–33, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), and may be resolved by Rule 12(b)(6) if clearly established by the allegations within the complaint, *see Vaughn v. United States Small Business Admin.,* 65 F.3d 1322, 1325–27 & n. 1 (6th Cir.1995); *see also Midland Psychiatric Assocs.,* 969 F.Supp. at 550–52 (Rule 12(b)(6) motion granted based on fiscal intermediary's official immunity); *Friedman,* 836 F.Supp. at 268 (same).

We reject Pani's assertion that nothing in his complaint supports Empire's affirmative defense of official immunity. Pani's complaint makes clear that all his allegations against Empire arise out of its role as a carrier for the Medicare "Part B" program. *See* Compl. ¶¶ 4–6, 9. Despite Pani's conclusory allegations that Empire's conduct was negligent and fraudulent, it is also clear, as discussed above, that the acts Pani complains of—investigating and referring possible fraud to the authorities—were discretionary and within the scope of Empire's duties. *See Group Health,* 739 F.Supp. at 930–33; *Friedman,* 836 F.Supp. at 268; *see also Norton v. McShane,* 332 F.2d 855, 858–59 (5th Cir. 1964) (test is whether the "act [has] more or less connection with the general matters committed by law to the officer's control or supervision, and [is not] manifestly or palpably beyond his authority"). We therefore affirm the district court's finding that the complaint itself establishes the facts necessary to sustain defendant's immunity defense.

■ Pani contends that the district court relied on extrinsic evidence to determine that immunity should apply and therefore was required to convert the motion to dismiss into a motion for summary judgment under Fed.R.Civ.P. 56, allowing Pani the opportunity to present extrinsic evidence in opposition to the motion. Specifically, Pani points to the district court's reference to the Medicare Carriers' Manual (an exhibit attached to the government's motion papers) for the proposition that Empire was required

to investigate and report instances of suspected fraud. This argument lacks merit. The district court referred to *C. Jack Friedman, Ph.D. & Assocs., P.C. v. Pennsylvania Blue Shield,* 836 F.Supp. 263 (E.D.Pa.1993), for the same proposition, indicating that its conclusion was not dependant upon the Medicare Carriers' Manual. Moreover, as discussed more fully above, the fact that Empire was contractually obligated to investigate and report possible fraud was readily established by reference to statutes and case law. *See, e.g.,* 42 U.S.C. § 1395u; 42 C.F.R. § 405.371(b); 42 C.F.R. § 421.200; *Bodimetric,* 903 F.2d at 482 n. 3; *Friedman,* 836 F.Supp. at 265, 268; *Livingston,* 788 F.Supp. at 550. It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes. *See Marshall County Health Care Auth. v. Shalala,* 988 F.2d 1221, 1222 (D.C.Cir.1993); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) (district court could consider documents of which the plaintiff had notice and which were integral to their claim in ruling on motion to dismiss even though those documents were not incorporated into the complaint by reference); *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991) (district court may examine public disclosure documents on 12(b)(6) motion).

■ Even if the district court had impermissibly relied on extrinsic material on a motion to dismiss, and therefore properly should have converted the 12(b)(6) motion to a motion for summary judgment, we would still conclude that Pani was not prejudiced. The government moved for summary judgment in the alternative. Thus, Pani had sufficient notice that summary judgment was possible and ample opportunity to submit supporting affidavits and evidence. *See Groden v. Random House, Inc.,* 61 F.3d 1045, 1052–53 (2d. Cir.1995); *see also SEC v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943) (district court's decision must be affirmed if correct result, even if based on improper ground); *George v. Kay,* 632 F.2d 1103, 1106 (4th Cir.1980) (same). In fact, Pani argued against summary judg-

ment in his memorandum of law to the district court, and in that same memorandum his argument against immunity quoted from and cited to the contract between Empire and HHS that was attached as an exhibit to the government's motion papers.

### C. Failure to Grant Leave to Amend

■ Finally, we reject Pani's argument that the district court erred in dismissing his claims without granting him leave to amend his complaint. Pani never requested leave to amend from the district court, and on appeal he has made no showing that he would be able to amend his complaint in a manner that would survive dismissal. *See Cinel v. Connick*, 15 F.3d 1338, 1346 (5th Cir.1994); *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 880 (1st Cir.1991).

Because we are confined to the four corners of the complaint in assessing whether Empire's alleged wrongdoing was covered by official immunity, we do not reach the issue of whether Empire's acts in approving Pani's claims for facet rhizotomy and assigning a code number without first checking with HHS are also subject to official immunity. However, for a number of reasons, we do not believe that an amended complaint that included this conduct would survive dismissal. First, it is virtually certain that Pani's claims would be barred by the statute of limitations. Under New York law, the statute of limitations is three years for tort claims and six years for contract claims. N.Y. C.P.L.R. §§ 213, 214 (McKinney's 1990). All of the tortious conduct alleged by Pani, whether in the complaint or in subsequent motion papers, occurred prior to November 1983, and Pani had notice of the injurious nature of this conduct no later than the time of his November 1983 indictment. Pani waited nearly ten years, until October 1993, to file his claim in state court, well beyond both the three-year and six-year limitations periods cited above.

■ Moreover, even if Pani's claim were not barred by the statute of limitations, it is extremely doubtful that there would be subject matter jurisdiction to consider such a complaint in light of the express limitations Congress placed on judicial review of agency determinations of Medicare "Part B" claims filed before 1987. *See* 42 U.S.C. §§ 405(h), 405(g), 1395ff(b), and 1395ii; *Heckler v. Ringer*, 466 U.S. 602, 614–15, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (interpreting § 405(h) to bar judicial review of any claim that is "inextricably intertwined" with benefits determinations under the Medicare Act); *Erika*, 456 U.S. at 206–08, 102 S.Ct. 1650 (holding that precisely drawn provisions of § 1395ff evinced Congress's deliberate intention to foreclose judicial review of Medicare "Part B" claims); *Kuritzky v. Blue Shield*, 850 F.2d 126, 127 n. 1 (2d Cir.1988) (explaining that 1986 amendments allowing judicial review of some claims applied only to Medicare services furnished after January 1, 1987). As we have explained previously, "jurisdiction is lacking where the claim is . . . that the insurance carrier misapplied or misinterpreted valid rules and regulations." *Id.* at 128; *see also Bodimetric*, 903 F.2d at 483–87; *Midland Psychiatric*, 969 F.Supp. at 547–50; *Gerardi v. Travelers Ins. Co.*, 961 F.Supp. 28 (D.Conn.1996); *Neiman v. Secretary of Dept. of Health and Human Services*, 722 F.Supp. 950 (E.D.N.Y.1988). Pani's proposed new allegations appear to be that Empire was negligent in its handling of his claims by assigning the wrong code number and failing to verify the code with HHS. Because these allegations boil down to assertions that Empire misapplied the Medicare rules and regulations, they are not subject to judicial review.

In light of Pani's failure to request leave to amend and failure to show any meritorious basis upon which he could amend his complaint, we conclude that the district court did not abuse its discretion when it dismissed Pani's complaint without leave to amend. We need not reach Pani's remaining arguments because a determination that Empire's investigation and report of suspected fraud was shielded by official immunity is sufficient to dispose of Pani's entire complaint.

### CONCLUSION

We hold that a private insurance company acting as a fiscal intermediary or carrier on behalf of the United States in the administration of a Medicare program is entitled to official immunity for claims that arise out of

the performance of its duty to investigate and report possible fraud. Accordingly, the judgment of the district court dismissing claims brought against Empire for investigating and reporting Pani for fraud is AFFIRMED.